J'UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
J'ON ALEXANDER and JUAN
IZQUIERDO, on behalf of themselves and
others similarly situated,

       Case No. 23 CV 11101 (ER)

    Plaintiffs,

  v.

DRG HOSPITALITY GROUP, INC. d/b/a
DELMONICO'S,

    Defendant.
-------------------------------------------------------x

## DECLARATION OF DENISE A. SCHULMAN

I, Denise A. Schulman, under penalty of perjury, affirm as follows:

1. My name is Denise A. Schulman. I am a partner at Joseph & Kirschenbaum LLP, Plaintiffs' counsel in the above-referenced action. I am familiar with the facts and circumstances set forth herein.

2. I submit this declaration in support of Plaintiffs' application for entry of a default judgment against Defendant DRG Hospitality Group, Inc. for failure to plead or otherwise defend this action.

### PROCEDURAL HISTORY AND BASIS FOR DEFAULT JUDGMENT

3. The complaint in this action was filed on December 21, 2023. A true and correct copy of the complaint is attached hereto as **Exhibit 1**.

4. This is an action for unpaid minimum wage, overtime, and spread of hours compensation; misappropriated tips; failure to provide adequate wage notices and wage statements; and failure to timely pay wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") and related regulations.

1

5. A summons and copy of the complaint was properly served on Defendant DRG Hospitality Group, Inc. at 56 Beaver Street, New York, New York on January 16, 2024, and Defendant's answer was due on February 6, 2024. A true and correct copy of the affidavit of service for that service is attached hereto as **Exhibit 2**.

6. Defendant was served with the summons and complaint a second time on March 15, 2024 via service on Business Filings Incorporated, Defendant's registered agent. A true and correct copy of the affidavit of service for that second service is attached hereto as **Exhibit 3**.

7. Defendant is not an infant, in the military, or an incompetent person.

8. Defendant's time to respond to the complaint has expired, and it has failed to appear, plead, or otherwise defend the action.

9. A certificate of default was entered against Defendant on April 8, 2024. A true and correct copy of the certificate of default is attached hereto as **Exhibit 4**.

10. The July 19, 2024 declaration of Juan Izquierdo ("Izquierdo Decl.") is attached hereto with its exhibits as **Exhibit 5**.

11. The July 17, 2024 declaration of J'on Alexander ("Alexander Decl.") is attached hereto with its exhibits as **Exhibit 6**.

12. Attached hereto as **Exhibit 7** is a true and correct copy of the menu provided on Delmonico's website.

## FACTS SUPPORTING ENTRY OF JUDGMENT

13. The following facts are set forth in Plaintiffs' complaint, the Izquierdo Decl., the Alexander Decl., and other exhibits submitted with this declaration.

14. Defendant DRG Hospitality Group, Inc. owns and operates Delmonico's restaurant located in Manhattan. (Compl. ¶ 3.)

15. Delmonico's opened in July 2023. During Plaintiffs' employment, the restaurant was open seven days a week. (Alexander Decl. ¶¶ 3-4.)

16. Delmonico's had gross volume of sales in excess of $500,000 in 2023, and its employees handled, sold, or otherwise worked on goods or materials that moved in or were produced for commerce. (Alexander Decl. ¶¶ 3-4, 13 (restaurant had average nightly sales of at least $20,000); Alexander Decl. ¶¶ 11-12; Alexander Decl. Ex. 2; Ex. 9 (showing that the restaurant's tips on just 17 days totaled $126,701.63); Ex. 7 (showing that the steaks Defendant sells come from outside the state of New York).)

17. Plaintiff J'on Alexander was employed at Delmonico's as a server from August 2023 to October 2023. (Alexander Decl. ¶¶ 2, 8; Alexander Decl. Ex. 1.)

18. Plaintiff Juan Izquierdo was employed at Delmonico's as a server/captain from August 2023 to October 2023. (Izquierdo Decl. ¶ 2; Izquierdo Decl. Ex. 1.)

19. Both Plaintiffs engaged in interstate commerce by regularly processing credit card payments at Delmonico's. (Alexander Decl. ¶ 7; Izquierdo Decl. ¶ 4.) *See Jacome*, 2021 U.S. Dist. LEXIS 130005, at *20-21; *Kim v. Kum Gang, Inc.*, No. 12 Civ. 6344, 2015 U.S. Dist. LEXIS 39095, at *76-77 n.48 (S.D.N.Y. Mar. 19, 2015).

20. Defendant paid Plaintiff Alexander pursuant to a tip credit. Specifically, Defendant paid Plaintiff Alexander $10 per hour, which was less than the $15 minimum wage applicable to New York City employers in 2023. (Compl. ¶ 21; Alexander Decl. ¶ 8; Alexander Decl. Ex. 1.) N.Y. Lab. L. § 652(1)(b); N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.3(b)(1).

21. Defendant was not entitled to pay Plaintiff Alexander pursuant to a tip credit under New York law because it did not give him written notice of the tip credit, and he often spent more than 20% or two hours of his workdays performing non-tipped work. (Compl. ¶¶ 22-24.) N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2, 146-2.9; *Canales v. World Pizza*, No. 14 Civ. 7748, 2017 U.S. Dist. LEXIS 50615, at *31-33 (S.D.N.Y. Mar. 31, 2017) (Ramos, J.) (stating that "[a]n employer is only permitted to apply a tip credit towards the minimum wage if it complies with" the written notice requirements of 12 N.Y.C.R.R. §§ 146-2.2 and granting plaintiffs motion for summary judgment on NYLL tip credit claim where employer did not provide notice); *Orellana v. One If By Land Rest. LLC*, No. 18 CV 7865, 2020 U.S. Dist. LEXIS 178095, at *35-37 (S.D.N.Y. Sept. 27, 2020).

22. Plaintiff Alexander sometimes worked more than 40 hours per week. (Compl. ¶¶ 25-26; Alexander Decl. Ex. 1.)

23. Because Defendant was not entitled to pay Plaintiff Alexander pursuant to a tip credit, it should have paid him one and a half times the full New York minimum wage of $15 – or $22.50 – for his overtime hours. *See* 29 C.F.R. § 778.5 (the "regular rate" for the calculation of overtime cannot be less than the higher of the federal or state minimum wage).

24. Instead, Defendant paid Plaintiff Alexander $17.10 per hour for his overtime hours, which is less than both the full overtime rate of $22.50 and the tip credit overtime rate of $17.50 ($15 * 1.5 - $5 tip credit). (Compl. ¶¶ 25-26; Alexander Decl. Ex. 1.) N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.

25. Plaintiff Alexander worked 10 shifts that lasted longer than 10 hours. (Alexander Decl. ¶ 9.) Defendant did not pay Alexander New York's spread of hours premium (an extra hour's pay at the full New York minimum wage) for these shifts. (Compl. ¶ 27.) N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.

26. Defendant distributed credit card and cash tips to employees through a tip pool that included three employees who were ineligible to receive tips because they had managerial authority over other employees: a sommelier named Sergio, a captain named Branko, and a maître d' named Laura. (Compl. ¶¶ 28-29; Alexander Decl. ¶ 10-11, 14-17; Izquierdo Decl. ¶¶ 7-8, 10-14.) 29 U.S.C. § 203(m)(2)(B) (stating that employers may not "allow[] managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit"); *Barenboim v. Starbucks Corp.*, 21 N.Y.3d 460, 473 (N.Y. 2012) (holding that managers with "meaningful authority" over subordinates, which includes participating in the hiring process, may not receive tips under N.Y. Lab. L. § 196-d).

27. Sergio hired other sommeliers and received tips for shifts when he did not provide customer service. (Compl. ¶ 28; Alexander Decl. ¶ 14; Izquierdo Decl. ¶ 10.)

28. Laura and Branko participated in interviewing and hiring employees and managing the restaurant. (Compl. ¶ 29; Alexander Decl. ¶¶ 15-16; Izquierdo Decl. ¶¶ 11-12.)

29. Each person in the tip pool was allocated a certain number of points based on his or her position. Captains, servers, bartenders, sommeliers, and maître d's got 10 points each, runners and barbacks got 7.5 points each, and bussers got 5 points each. (Alexander Decl. Ex. 2; Alexander Decl. ¶ 17; Izquierdo Decl. ¶ 13.)

30. All tips for a shift were distributed on a *pro rata* basis according to the number of points allocated to each person included in the tip pool for that shift. (Alexander Decl. ¶ 18; Izquierdo Decl. ¶ 14.)

31. Plaintiffs' payday was Friday. The paychecks they received on Fridays were for the weekly pay period that ended the preceding Sunday. (Compl. ¶ 30; Alexander Decl. Ex. 1; Izquierdo Decl. Ex. 1.)

32. Plaintiffs' cash tips were not included in their paychecks or wage statements. In fact, Defendant did not distribute cash tips to Plaintiffs until more than one week after the end of the workweek in which they were earned. (Compl. ¶¶ 31-32; Alexander Decl. ¶ 8; Alexander Decl. Ex. 1; Izquierdo Decl. ¶ 5; Izquierdo Decl. Ex. 1.)

33. Plaintiffs were manual workers under N.Y. Lab. L. § 190 because their jobs consisted almost entirely of manual work such as walking, carrying items, and cleaning. (Alexander Decl. ¶ 6; Izquierdo Decl. ¶ 3.) *Urtubia v. B.A. Victory Corp.*, 857 F. Supp. 2d 476, 482 (S.D.N.Y. 2012) (waitstaff are manual workers under NYLL); *Beh v. Cmty. Care Companions*, No. 19 CV 1417, 2021 U.S. Dist. LEXIS 197316, at *7 (W.D.N.Y. Feb. 1, 2021) (noting that "cooks, wait staff, . . . and pizzeria workers have been found to be 'manual workers'" under the NYLL). As such, the late payment of cash tips violated N.Y. Lab. L. § 191(1)(a)(i), which provides that "[a] manual worker shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned."

34. Defendant's failure to include Plaintiffs' cash tips in their wage statements violated N.Y. Lab. L. § 195(3), which requires wage statements to list an employee's gross wages. (Alexander Decl. ¶ 8; Alexander Decl. Ex. 1; Izquierdo Decl. ¶ 5; Izquierdo Decl. Ex. 1.) As a result of this violation, Defendant paid Plaintiff their cash tips late.

35. Defendant violated N.Y. Lab. L. § 195(1) by failing to provide Plaintiffs with written wage notices at the time of their hire. (Compl. ¶ 34.) As a result of this violation, Defendant's payment to Plaintiff Alexander of the tip credit minimum wage was an underpayment, N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.3, 146-2.2, and Plaintiffs did not know that they cash tips were paid to them in an untimely manner. (Compl. ¶ 34.)

**DAMAGES**

36. A damages inquest is not necessary. The Second Circuit has explained:

> Upon entry of default, a plaintiff's claims for damages generally must be established in an evidentiary proceeding at which the defendant is afforded the opportunity to contest the amount claimed. There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence. While Rule 55(b)(2) permits the district court to conduct a hearing to determine damages, such a hearing is not mandatory.

*Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (cleaned up).

37. Here, Plaintiffs have submitted detailed declarations and supporting documents which provide a sufficient evidentiary basis for the calculation of damages without the need for an inquest hearing. *See Pena v. Metro. Wireless Anandpur Inc.*, No. 21 CV 2239, 2021 U.S. Dist. LEXIS 211935, at *4-5 (S.D.N.Y. Nov. 1, 2021); *Schalaudek v. Chateau 20th St. LLC*, No. 16 CV 11, 2017 U.S. Dist. LEXIS 26272, at *11-12 (S.D.N.Y. Feb. 24, 2017); *Chen v. New Fresco Tortillas Taco LLC*, No. 15 Civ. 2158, 2015 U.S. Dist. LEXIS 125949, at *4 (S.D.N.Y. Sept. 21, 2015).

38. Under both the FLSA and NYLL, a plaintiff bears the burden of proving that he or performed work for which he or she was improperly compensated. *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 361 (2d Cir. 2011); *Accosta v. Lorelei Events Grp. Inc.*, No. 17 CV 07804, 2022 U.S. Dist. LEXIS 11494, at *9 (S.D.N.Y. Jan. 21, 2022).

39. However, both statutes also require employers to maintain records of, *inter alia*, employees' hours worked and compensation. *E.g.*, 29 C.F.R. § 516.2; N.Y. Lab. L. § 661; N.Y. Comp. Codes R. & Regs. tit. 12, § 146-2.1.

40. Under the FLSA, where an employer fails to maintain accurate records,

> An employee has carried out his burden [of establishing damages] if he proves that he has in fact performed work for which he was improperly compensated and if he produced sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687-688 (1946).

41. "A similar standard applies to unpaid compensation claims under the NYLL." *Pena*, 2021 U.S. Dist. LEXIS 211935, at *7 (cleaned up). However, the employer's burden is higher under the NYLL. The NYLL "does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. . . . An employer must demonstrate that it in fact paid its employees" everything that is owed to them under the law. *Galvez v. 800 Ginza Sushi, Inc.*, No. 19 Civ. 8549, 2022 U.S. Dist. LEXIS 43523, at *20 (S.D.N.Y. Mar. 11, 2022).

42. On a default motion, an employee's recollection of his or her hours worked is sufficient to carry his or her initial burden, and "[a]bsent rebuttal by defendants, the employee's recollection and estimates of hours worked are presumed to be correct." *Schalaudek*, 2017 U.S. Dist. LEXIS 26272, at *12-13 (cleaned up); *see also, e.g.*, *Villanueva v. 179 Third Ave. Rest Inc.*, 500 F. Supp. 3d 219, 232 (S.D.N.Y. 2020). Here, Plaintiffs have carried their burden through both documentary evidence and their sworn declarations.

43. Spreadsheets that I prepared showing Plaintiffs' damages are attached hereto as **Exhibits 8-11**. These spreadsheets reflect Plaintiffs' damages under the NYLL because that affords them a greater recovery than the FLSA. *See Caputi-Richards v. Chuck's Vintage, Inc.*, No. 22 Civ. 6409, 2023 U.S. Dist. LEXIS 62954, at *4-5 (S.D.N.Y. Apr. 11, 2023) (noting that although "a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice. Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages") (internal quotation marks omitted).

44. **Exhibit 8** is a summary spreadsheet showing Plaintiff Alexander's compensatory and liquidated damages for unpaid minimum wage, overtime, and spread of hours compensation; each Plaintiff's compensatory and liquidated damages for misappropriated credit card and cash tips; each Plaintiff's liquidated damages for late paid cash tips; each Plaintiff's damages for violations of N.Y. Lab. L. § 195(1); each Plaintiff's daily prejudgment interest rate; and each Plaintiff's prejudgment interest accrued to date.

45. **Exhibit 9** compiles data from the tip sheets submitted as Exhibit 2 to the Alexander and Izquierdo declarations. For the listed shifts, it shows the total tip pool points; each Plaintiff's points; the points of each person who was improperly included in the tip pool; the number of people who worked in each position included in the tip pool; the total cash tips collected, the total credit card tips collected; cash tips as a percentage of credit card tips, the total tip pool points for tip eligible employees (*i.e.*, the total tip pool points after subtracting points for Sergio, Laura, and Branko); the amount of tips paid to tip ineligible employees, which was calculated by dividing the total cash and credit tips by the total

number of points and multiplying that by the number of points assigned to Sergio, Laura, and Branko for the shift; the amount of tips actually received by each Plaintiff, which was calculated by dividing the total cash and credit card tips by the total number of points and multiplying that by the number of points assigned to each Plaintiff; each Plaintiff's percentage share of the points assigned to tip eligible employees, which was calculated by dividing each Plaintiff's points by the total tip pool points for tip eligible employees; each Plaintiff's share of tips paid to tip ineligible people, which was calculated by multiplying each Plaintiffs share of points assigned to tip eligible employees by the total tips paid to tip ineligible people; and each Plaintiff's misappropriated tips as a percentage of the tips he actually received, which was calculated by dividing each Plaintiff's share of tips paid to tip ineligible employees by his tips actually received.

46. Exhibit 9 also shows the total cash tips and credit card tips collected by the restaurant for the 17 shifts reflected in the records and averages for the cash tips as a percentage of credit card tips and each Plaintiff's misappropriated tips as a percentage of the tips he actually received.

47. **Exhibit 10** shows the calculation of Plaintiff Alexander's individual damages (unpaid minimum wage, overtime, and spread of hours compensation; NYLL § 195 damages; misappropriated tips; and late paid tips).

48. I calculated Plaintiff Alexander's unpaid minimum wage and overtime compensation based on his paystubs, which are attached as Exhibit 1 to his declaration. The unpaid minimum wage was calculated by multiplying the difference between the full minimum wage and the regular rate he was actually paid by the number of non-overtime hours for which he was paid. The unpaid overtime compensation was calculated by multiplying the

difference between one and a half times the minimum wage and the overtime rate he was actually paid by the number of overtime hours for which he was paid.

49. As Plaintiff Alexander stated in his declaration that he worked 10 double shifts during his employment, his compensatory damages for spread of hours violations was calculated by multiplying 10 by $15, the applicable New York minimum wage in 2023. (Alexander Decl. ¶ 9.) N.Y. Comp. Codes R. & Regs. tit. 12, §§ 146-1.2(c)(1)(i), 146-1.6.

50. Damages for NYLL § 195(1), (3) violations are calculated based on workdays, with damages for NYLL § 195(1) violations being $50 per workday up to a maximum of $5,000 and damages for NYLL § 195(3) violations being $250 per workday up to a maximum of $5,000. N.Y. Lab. L. §§ 198(1-b), (1-d).

51. Plaintiff Alexander stated in his declaration that he worked for Defendant in 10 weeks and that he worked five days during six of those weeks and six days the other four weeks. (Alexander Decl. ¶¶ 2, 5.) Thus, he worked 54 days, resulting in damages of $2,700 for NYLL § 195(1) violations and $5,000 for NYLL § 195(3) violations.

52. I used Plaintiff Alexander's paystubs and the data in Exhibit 9 to calculate his misappropriated tips (credit card and cash) and late paid cash tips.

53. First, I multiplied the total credit card tips Plaintiff Alexander received as reflected in his paystubs ($13,287.11) (Alexander Decl. Ex. 1) by the average of his misappropriated tips as a percentage of tips received from Exhibit 9 (10.48%) to determine his total misappropriated credit card tips ($1,392.74).

54. Then I multiplied his total credit card tips received as reflected in his paystubs ($13,287.11) by the average cash tips as a percentage of credit card tips from Exhibit 9 (15.23%) to

determine the amount of cash tips he actually received ($2,023.04). This number is Plaintiff Alexander's late paid cash tips.

55. I then multiplied Plaintiff Alexander's total cash tips received ($2,023.04) by the average of his misappropriated tips as a percentage of tips received (10.48%) to determine his total misappropriated cash tips ($212.05).

56. **Exhibit 11** shows the calculation of Plaintiff Izquierdo's individual damages (misappropriated tips, late paid tips, and NYLL § 195 damages).

57. I calculated Plaintiff Izquierdo's misappropriated tips and late paid tips in the same way that I calculated Plaintiff Alexander's misappropriated tips and late paid tips as described in paragraphs 52-55 *supra*. I used the total credit card tips received from Plaintiff Izquierdo's last paycheck ($9,280.93) (Izquierdo Decl. Ex. 1), his average misappropriated tips as a percentage of tips received from Exhibit 9 (10.92%), and the average cash tips as a percentage of credit card tips from Exhibit 9 (15.23%).

58. Plaintiff Izquierdo stated in his declaration that he worked for Defendant in 7 weeks, that he usually worked five days a week, and that he worked four days per week in two or three weeks. (Izquierdo Decl. ¶ 6.) To calculate damages for NYLL § 195 violations, I used 33 workdays (five days per week for five weeks and four days per week for two weeks), resulting in damages of $1,650 for NYLL § 195(1) violations and $5,000 for NYLL § 195(3) violations.

59. The summary spreadsheet (Exhibit 8) includes liquidated damages for unpaid minimum wage, overtime, and spread of hours compensation; misappropriated tips; and late paid tips. For each category, the liquidated damages are equal to the amount of the unpaid or late paid compensation.

60. Under the FLSA and NYLL, an employer will be liable for liquidated damages equal to the amount of unpaid wages unless it establishes the affirmative defense that it had a good faith belief that it was complying with the law. 29 U.S.C. §§ 216(b), 260; N.Y. Lab. L. §§ 198(1-a), 663(a); *Villanueva*, 500 F. Supp. 3d at 235 ("Both the FLSA and the NYLL provide for liquidated damages.").

61. To avoid mandatory liquidated damages under the FLSA and NYLL an employer must prove that it "took active steps to ascertain the dictates of the [law] and then act[ed] to comply with them," and "that its good-faith actions were objectively reasonable." *Chichinadze v. BG Bar Inc.*, 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021) (internal citations omitted).

62. By virtue of its default, Defendant has "not provided any evidence to suggest [it] had a good faith basis to believe [its] underpayment complied with the law[,]" and Plaintiffs are entitled to liquidated damages equal to the amount of their unpaid wages. *Caputi-Richards*, 2023 U.S. Dist. LEXIS 62954, at *6.

63. Plaintiffs are also entitled to recover liquidated damages equal to the amount of their late paid tips. *See Vega v. CM & Assocs. Constr. Mgmt., LLC*, 175 A.D.3d 1144, 1146 (N.Y. App. Div. 1st Dep't 2019) ("[L]iquidated damages may be available under Labor Law § 198(1-a) to provide a remedy to workers complaining of untimely payment of wages, as well as nonpayment or partial payment of wages."); *see also*, *e.g.*, *Collins v. Hanesbrands Inc.*, No. 23 Civ. 1818, 2023 U.S. Dist. LEXIS 200684, at *5 (S.D.N.Y. Nov. 8, 2023); *Krawitz v. Five Below, Inc.*, No. 22 Civ. 2253, 2023 U.S. Dist. LEXIS 175800, at *4 (E.D.N.Y. Sept. 29, 2023); *Lipstein v. 20X Hosp. LLC*, No. 22 Civ. 4812, 2023 U.S. Dist. LEXIS 167615, at *34-35 (S.D.N.Y. Sept. 19, 2023); *Gumaneh v. Vilano Empl. Servs.*, No.

22 Civ. 774, 2023 U.S. Dist. LEXIS 156383, at *19 (S.D.N.Y. Sept. 5, 2023); *Bello v. Pro-Line Pumping Corp.*, No. 22 Civ. 4081, 2023 U.S. Dist. LEXIS 106676, at *22-23 (E.D.N.Y. June 20, 2023); *Williams v. Miracle Mile Props 2 LLC*, No. 20 Civ. 3127, 2022 U.S. Dist. LEXIS 19826, at *27-29 (E.D.N.Y. Feb. 1, 2022); *Day v. Tractor Supply Co.*, No. 22 Civ. 489, 2022 U.S. Dist. LEXIS 217201, at *19 (W.D.N.Y. Nov. 30, 2022).

64. Plaintiffs are also entitled to prejudgment interest on their compensatory damages for NYLL violations at the statutory annual rate of 9%. N.Y. Lab. L. §§ 198(1-a), 663(1); N.Y. C.P.L.R. §§ 5001, 5004; *Caputi-Richards*, 2023 U.S. Dist. LEXIS 62954, at *7; *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11.

65. Prejudgment interest in NYLL cases is ordinarily calculated from the midpoint of a plaintiff's employment. *E.g.*, *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11.

66. Because Plaintiff Alexander has all of his paystubs (Alexander Decl. ¶ 8), I used the first day of his first pay period (August 21, 2023) as his start date and the last day of his last pay period (October 29, 2023) as his end date to reach a midpoint of September 24, 2023. (Alexander Decl. Ex. 1.)

67. Plaintiff Izquierdo has his last paystub but not his first paystub. (Izquierdo Decl. ¶ 5; Izquierdo Decl. Ex. 1 (oldest paystub's (September 22, 2023 check date) year to date amounts reflect an earlier pay period).) However, he stated in his declaration that his employment began in August 2023, and he is included in the restaurant's tip sheet for August 28, 2023. (Izquierdo Decl. ¶ 2; Izquierdo Decl. Ex. 2 at P7-8.) Accordingly, I used August 28, 2023 as his start date and the last day of his last pay period (October 22, 2023) as his end date to reach a midpoint of September 24, 2023. (Izquierdo Ex. 1.)

68. Each Plaintiff's daily interest rate is calculated by multiplying his total compensatory damages for unpaid regular pay, overtime pay, spread of hours pay, and tips by 9% and dividing the result by 365. Plaintiff Alexaner's daily interest rate is therefore 86 cents (compensatory damages of $3,493.19 * 0.09 / 365), and his accrued interest from September 24, 2023 to July 22, 2024 is $260.12. Plaintiff Izquierdo's daily interest rate is 29 cents (compensatory damages of $1,167.86 * 0.09 / 365), and his accrued interest from September 24, 2023 to July 22, 2024 is $86.97.

## ATTORNEYS' FEES AND COSTS

69. JK is a law firm dealing almost exclusively with employee rights. Specifically, the firm represents employees in wage/hour and employment discrimination matters.

70. D. Maimon Kirschenbaum manages the firm.

71. Since graduating from Fordham University School of Law in 2005, Mr. Kirschenbaum has worked at JK. As a result of his accomplishments, he became member/partner of the firm in May of 2007.

72. I received my J.D. from New York University School of Law in 2008 and joined JK in January 2009. I was an associate until February 2017, when I became a partner.

73. Throughout my tenure at JK, I have almost exclusively represented employees with wage and hour and discrimination/retaliation claims, on both an individual and class basis.

74. I have also spoken on several CLE panels about substantive and procedural wage and hour matters.

75. Mr. Kirschenbaum and I have litigated dozens of wage and hour cases against restaurants or other hospitality employers. Many of these cases have been certified as collective and/or class actions. *E.g.*, *Shahriar v. Smith & Wollensky Rest. Group*, 659 F.3d 234 (2d Cir.

2011); *Martinenko v. 212 Steakhouse Inc.*, No. 22 CV 518, 2023 U.S. Dist. LEXIS 73982 (S.D.N.Y. Apr. 27, 2023); *Megason v. Starjem Rest. Corp.*, No. 12 Civ. 1299, 2014 U.S. Dist. LEXIS 3910 (S.D.N.Y. Jan. 13, 2014); *Schear v. Food Scope Am, Inc.*, 297 F.R.D. 114 (S.D.N.Y. 2014); *Spicer v. Pier Sixty LLC*, 2012 U.S. Dist. LEXIS 137409 (S.D.N.Y. Sept. 14, 2012); *Lomeli v. Falkirk Mgmt. Corp.*, Index No. 1580-2016 (N.Y. Sup. Ct. Orange County Oct. 22, 2021); *Murphy v. Lajaunie*, No. 13 CV 6503, 2015 U.S. Dist. LEXIS 97531, 2015 WL 4528140 (S.D.N.Y. July 24, 2015); *Spicer v. Pier Sixty LLC*, 269 F.R.D. 321 (S.D.N.Y. 2010); *Kato v. Masa NY, LLC*, Index No. 09-104578 (N.Y. Sup. Ct. N.Y. County Jan. 28, 2010); *Delaney v. Geisha NYC, LLC*, 261 F.R.D. 55 (S.D.N.Y. 2009).

76. Several of our cases have changed the landscape of wage and hour class and collective litigation in general, and such litigation in the food service industry specifically. *See*, *e.g.*, *Shahriar*, 659 F.3d 234 (affirming class certification and holding that in FLSA actions pursued on a collective basis under 29 U.S.C. § 216(b), courts may exercise supplemental jurisdiction over state law claims pursued on a class basis under Fed. R. Civ. P. 23); *Spicer*, 249 F.R.D. 321 (holding that the New York Court of Appeals' decision in *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), finding that mandatory charges can be gratuities applies retroactively and issuing first denial of a defendant's summary judgment motion on *World Yacht* claim).

77. Courts have repeatedly recognized Mr. Kirschenbaum's and my skill and expertise in wage and hour litigation. *E.g.*, *Orlando v. Liberty Ashes, Inc.*, No. 15 CV 9434, at 10:18-20 (S.D.N.Y. Sept. 4, 2020) ("[I]n my entire experience with [the undersigned] in this case, and a lot of others, she's always been among the very best lawyers in this case.") (transcript attached as **Exhibit 12**); *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13 CV

5008, at 20:1-3 (S.D.N.Y. Dec. 22, 2015) (stating, "I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work") (transcript attached as **Exhibit 13**).

78. Evelyn Velesaca joined JK as an administrative assistant in February 2022 and was a paralegal at the firm from January 2023 to December 2023. She received her B.A. from Hunter College in 2022. Before joining JK, Ms. Velesaca interned at Kramer Levin Naftalis & Frankel, the New York City Department of Social Services, and Volunteers of Legal Service.

79. Mr. Kirschenbaum and I have recently been awarded fees at a rate of $500 per hour, and our firm's paralegals have been awarded fees at a rate of $125 per hour. *Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518 (S.D.N.Y. Apr. 12, 2023) at 32-33 (attached hereto as **Exhibit 14**), *adopted by Martinenko v. 212 Steakhouse, Inc.*, No. 22 CV 518 (S.D.N.Y. Apr. 28, 2023) (attached hereto as **Exhibit 15**); *Zivkovic v. Laura Christy LLC*, No. 17 Civ. 553 (S.D.N.Y. June 15, 2022) at 16:16-19, 17:11-24 (transcript attached as **Exhibit 16**).

80. A true and correct copy of JK's contemporaneous time records for this action is attached hereto as **Exhibit 17**. I exercised billing judgment to omit duplicative, administrative, or similar time entries. In sum, Plaintiffs seek the following attorneys' fees:

| Biller | Hours | Rate | Total |
|---|---|---|---|
| D. Maimon Kirschenbaum | 2.9 | $500 | $1,450 |
| Denise A. Schulman | 18.6 | $500 | $9,300 |
| Evelyn Velesaca | 0.8 | $125 | $100 |
| | | **Total:** | **$10,850** |

81. JK has incurred the following costs in this action:

| Description of cost | Total costs |
|---|---|
| Filing fee | $405 |
| Service of process | $349 |
| **Total:** | **$754** |

82. True and correct copies of invoices for the service of process expenses are attached hereto as **Exhibit 18**. The Court may take judicial notice of the filing fee. *E.g.*, *Yu v. Shanghai Dumpling, Inc.*, No. 19 CV 07601, 2023 U.S. Dist. LEXIS 200185, at *26 (S.D.N.Y. Oct. 5, 2023).

### PROPOSED JUDGMENT AND STATEMENT OF DAMAGES

83. Plaintiffs will file a proposed judgment and statement of damages simultaneously with this declaration. As the judgment date is not yet known, the statement of damages reflects prejudgment interest up to July 22, 2024.

84. The NYLL provides that any portion of a judgment that "remain[s] unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal therefrom is then pending, whichever is later, . . . shall automatically increase by fifteen percent." N.Y. Lab. L. §§ 198(4), 663(4). Accordingly, Plaintiffs' proposed judgment incorporates this provision. *See Caputi-Richards*, 2023 U.S. Dist. LEXIS 62954, at *17; *Pena*, 2021 U.S. Dist. LEXIS 211935, at *11-12.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
      July 22, 2024                 /s/ Denise A. Schulman
                                        Denise A. Schulman