**Exhibit 12**

K94LORLH

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   CARL ORLANDO, *et al*,

4               Plaintiffs,

5           v.                 15 Civ. 9434 (RJS)

6

   LIBERTY ASHES, INC., *ET AL*,
7                       **Fairness Hearing Teleconference**

8               Defendant.

9   ------------------------------x
                         New York, N.Y.
10                     September 4, 2020
                     10:00 a.m.
11

   Before:
12
                HON. RICHARD J. SULLIVAN,
13
                         District Judge
14

15                  APPEARANCES

16   JOSEPH & KIRSCHENBAUM LLP
         Attorney for Plaintiffs
17   BY:  DENISE ANDREA SCHULMAN

18   LAW OFFICE OF FINN W. DUSENBERY
         Attorney for Plaintiffs
19   BY:  FINN WALTER DUSENBERY

20   TRIVELLA & FORTE LLP
         Attorneys for Defendants
21   BY:  CHRISTOPHER A. SMITH
         SCOTT PAUL TRIVELLA
22

23

24

25

K94LORLH

1              THE COURT:  Good morning.

2              All right.  So I think we have a lot of people on.  If

3       I can ask attorneys to mute themselves unless they are asked to

4       speak; okay?  Let me just make sure the lawyers are here.

5              For the plaintiffs, counsel, can you just state your

6       name for the record?

7              MS. SCHULMAN:  Denise Schulman, of Joseph

8       Kirschenbaum.

9              THE COURT:  Okay.  Ms. Schulman, good morning.

10             MS. SCHULMAN:  Good morning, your Honor.

11             THE COURT:  Anybody else from your firm?

12             MS. SCHULMAN:  No.  Mr. Dusenbery is on as well.

13             THE COURT:  Yes.  Okay.

14             Mr. Dusenbery, you're at a separate firm but cocounsel

15      on this case?  You're here?

16             MR. DUSENBERY:  Yes.

17             THE COURT:  I'm sorry.  I didn't hear what you said,

18      Mr. Dusenbery.  You're here?

19             MS. SCHULMAN:  He's on by phone.  So I don't know if

20      he can unmute himself.

21             THE COURT:  Oh, okay.  Do we know what phone number he

22      is?

23             DEPUTY CLERK:  Yes.  It's the 607 number.

24             THE COURT:  Okay.  Let's unmute that.

25             Okay.  Mr. Dusenbery, you there?  Because we may need

1   to hear from you.

2             All right.  I don't know what the problem is there.

3             Mr. Dusenbery?

4             DEPUTY CLERK:  He said he's trying to unmute his phone

5   but it's not working.

6             THE COURT:  Did he just mute his own phone?

7             DEPUTY CLERK:  Try clicking star six.

8             MR. DUSENBERY:  Can you hear me now?

9             THE COURT:  Yes.

10            MR. DUSENBERY:  Okay.  Great.

11            THE COURT:  All right.  You're here.

12            All right.  Any other lawyers for plaintiffs?

13            MS. SCHULMAN:  No.

14            THE COURT:  No.  All right.

15            And for the defendants, Liberty Ashes?

16            MR. SMITH:  Yes.  Good morning, your Honor.

17            Christopher Smith here.  And I've got my colleague,

18  Scott Trivella, in the background, from the firm of Trivella &

19  Forte, for defendants.

20            MR. TRIVELLA:  Good morning, your Honor.

21            THE COURT:  Good morning to each of you.

22            Mr. Trivella, are you on the docket sheet?

23            MR. TRIVELLA:  I believe so, your Honor.  Yes.

24            THE COURT:  I don't see it.

25            Mr. Smith has been on the docket sheet for some time,

1  but I don't see Mr. Trivella.  Or maybe it's worth filing a

2  notice of appearance just so the record is clear.  But this is

3  what is likely to be the final conference in this matter.

4        So we're here for a fairness hearing.  This case has a

5  long history, which I'll get into in a minute.  But let me just

6  make sure that each of the plaintiffs who are subject to this

7  settlement are here today.

8        So is Mr. Orlando here?  And counsel can tell me.  I

9  don't need to necessarily unmute everybody, because that gets

10  complicated.

11       But is Mr. Orlando here?

12       MS. SCHULMAN:  Yes, he is.

13       THE COURT:  And Mr. Menna is here?

14       PLAINTIFF MENNA:  Yes, I'm here.

15       THE COURT:  Okay.  Mr. Acevedo?

16       PLAINTIFF ACEVEDO:  Yes, I'm here.

17       THE COURT:  Good.  Do we have Quamaine Powell?

18       MS. SCHULMAN:  Quamaine, you can also press star six

19  to unmute yourself.

20       I see his phone number there.

21       THE COURT:  All right.

22       PLAINTIFF POWELL:  Yes.  I'm here.

23       THE COURT:  Okay.  Mr. Powell, good morning.

24       And then finally, Ramedeo Persad.

25       MS. SCHULMAN:  Ramedeo, press star six and then let us

1  know you're here.

2           PLAINTIFF PERSAD:  I'm here, your Honor.

3           THE COURT:  Great.  Good morning to you.

4           PLAINTIFF PERSAD:  Good morning.

5           THE COURT:  Let me explain to each of the plaintiffs

6  why we're here.  So let me ask everybody to mute themselves in

7  the interim.

8           So ordinarily, when there's a case -- a civil case, a

9  plaintiff files --

10          Can everybody mute themselves again.

11          Okay.  That sounds better.  This is tricky.  We're

12  doing this -- I'm still getting a lot of feedback.

13          We're doing this because of COVID remotely.

14  Technology has been very good, but it does have its side

15  effects and drawbacks.  When you have this many people on a

16  call -- some appearing by video, some by phone -- it does lead

17  sometimes to background noise, which can be very distracting.

18  It also can sometimes lead to people getting frozen out.  So

19  hopefully we can manage it.

20          But this is a case, as I said, that was started in

21  2015.  Ordinarily a civil case involving private litigants can

22  resolve itself whenever the parties think that they want to

23  settle it.  They don't have to go forward.  There's a small

24  number of cases where courts have to get involved to make sure

25  that the settlement is fair or appropriate.  Any case involving

1    a child or someone who is incapacitated mentally would require

2    the Court to make sure that the person representing that child

3    or that incapacitated person is looking out for the best

4    interests of that person.  Sometimes a class action which might

5    involve thousands or tens of thousands of plaintiffs who will

6    be affected by a settlement, the judge will have to pass on the

7    fairness of that settlement.  In cases like this one, involving

8    allegations of overtime or nonpayments of minimum wage, courts

9    get involved to assess the fairness.  There is a concern that

10   employees might be at a disadvantage and might be inclined to

11   settle for less than what they're entitled to under the law.  I

12   think one could argue that this is not necessary, that this is

13   maybe treating people like children when adults should be able

14   to manage their own affairs.  But that's the state of the law,

15   and that's why we're here today.

16        So I'm here to make sure that the plaintiffs

17   understand this settlement and that they agree to it, that they

18   believe it is fair.  And then I will make sure that I

19   understand the settlement and that I think it's fair as well.

20   So that's the purpose of this proceeding.

21        For the defendants, are their clients here, Mr. Smith?

22        MR. SMITH:  No, your Honor.

23        THE COURT:  No.  And they don't have to be.

24        But the bottom line is this:  The prospective of a

25   fairness hearing is from the plaintiff's perspective.  It's

1  making sure that this is a fair settlement for the plaintiff.

2  The defendant, who's presumed to be an adult and is presumed to

3  be able to look out for its own interest, which in some ways I

4  think probably ought to apply across the board.  But in any

5  event, that's why we're here.

6         So I have received a proposed settlement agreement and

7  a letter from plaintiffs' counsel that summarizes what -- I

8  guess Ms. Schulman on behalf of all the plaintiffs.  And it

9  summarizes what this settlement entails.  And so I want to just

10 make sure that everyone knows what it entails.

11        So according to the settlement, this case will settle

12 for a total of $425,000.  Now, of that total, a third -- or

13 actually a little more than a third will go to the attorneys in

14 the form of fees and the costs that it took to litigate this

15 case.  The rest will be divided among the plaintiffs in

16 different amounts pending in part on the different hours that

17 they worked with the different periods of time in which they

18 worked.  So that is what the basics of this settlement are.

19        Now, according to the settlement agreement, Mr.

20 Orlando is to receive $66,636.70; Mr. Menna is to receive

21 $79,450.48; Mr. Acevedo is to receive $27,214.22; Mr. Powell is

22 to receive $35,117.20; and Mr. Persad is to receive $66,784.42.

23 So that is what the breakdown is for the amounts going to the

24 plaintiffs.

25        So I know the plaintiffs are all on mute.  Stay on

1    mute unless you don't understand that or you have some concerns

2    or problems with the numbers that I just read.  If you think

3    that's okay, then you can stay silent, but if these numbers

4    don't reflect what you understand, then you should tell me

5    that.

6         So I didn't hear anything.  I'm assuming that

7    everybody understands that these are the terms.

8         So when I assess the fairness of a settlement, I'm

9    required to look at a number of factors.  One of those factors

10   is the range of possible recoveries:  If this thing went to

11   trial, what's the best outcome that could have been achieved?

12   I have to consider that.  I also have to consider, of course,

13   the costs and the burdens that would come with taking this case

14   to a trial.  I also have to consider the risks of losing a

15   case.  There are no guarantees that anybody will win a trial;

16   sometimes people lose.  And so that would mean a lot of time, a

17   lot of expense, and no recovery.  So I have to consider the

18   risks.  I also have to consider this settlement and the nature

19   of it.  Was it negotiated arm's length by counsel?  Was there

20   any suggestion or width of there being fraud or collusion

21   between the plaintiffs and the defendants or their lawyers?  So

22   those are the things that I'm looking at.  Okay?  And then I

23   have to assess the fairness of the fees going to the attorneys

24   here.  So I have Ms. Schulman's letter.

25         Ms. Schulman, the one thing I wasn't sure about was

K94LORLH

what you thought the sort of best case scenario was.  If this case went to trial, what do you think the recovery would be if you won across the board?

MS. SCHULMAN:  The best case scenario as far as compensatory damages, liquidated damages, would be about $550,000.

THE COURT:  All right.  So 550,000 would be the best case scenario, and then attorney's fees on top of that if you won.

MS. SCHULMAN:  Correct.

THE COURT:  So this settlement then is, you know, basically after attorney's fees, clocked in at about a little more than half to two-thirds.  Is that right?

MS. SCHULMAN:  Yes.

THE COURT:  Okay.  So I will say that I think that that's not a bad percentage.  I mean, it is not unusual for people to settle, you know, for less than a hundred cents on the dollar of what the best scenario would be, because the best scenario doesn't always come to pass.  Certainly a trial would be expensive and would take longer.  Certainly there are litigation risks in this case.  That was true from the beginning.  That was identified as whether or not these plaintiffs are exempt under the motor carrier exemption.  That motion was made and then sort of withdrawn so that we could pursue different arguments on a motion to compel arbitration,

1  and then renewed.  It's still pending.  It was always -- I

2  thought frankly -- a close call.  Even if it was denied by me,

3  I think it might have required just additional discovery or

4  might have required a trial.  But I don't think that it was a

5  slam dunk.  Some of these cases are slam dunks.  They involve

6  people who have worked and there's no record of what they

7  worked, and there is really no dispute that they worked the

8  hours.  There is no argument of Mr. Persad.  In this case there

9  is a legal argument that is not frivolous.  It is certainly a

10  live issue I think.  So the litigation risk I think is real.

11        In terms of the arm's length quality of the

12  negotiation, I can say that these lawyers have been involved in

13  this case -- most of them -- for some lengthy period of time.

14  I also can say that these lawyers -- plaintiff's lawyers in

15  particular, who I see in a lot of these cases are very highly

16  regarded for these kinds of cases.  So Ms. Schulman is now a

17  partner at the firm of Joseph and Kirschenbaum.  She began this

18  case as an associate there.  But in my entire experience with

19  her in this case, and a lot of others, she's always been among

20  the very best lawyers in this case.  So I have no doubt that

21  this firm and these plaintiffs' lawyers are zealous advocates

22  for their clients.

23        I have no reason to doubt that of the defendants as

24  well.  I think I've had some other cases with Mr. Smith.  But

25  certainly, these are very reputable law firms, very responsible

K94LORLH

| | |
|---|---|
| 1 | law firms.  There's no reason to think there was any collusion |
| 2 | or fraud going on here.  This was an arm's length negotiation |
| 3 | for an amount that strikes me as fair and reasonable in light |
| 4 | of the litigation risks. |
| 5 | So does anybody disagree with that?  Is anybody |
| 6 | concerned? |
| 7 | Let me ask the plaintiffs.  Are any of you concerned |
| 8 | about the amount of money that will be going the attorneys? |
| 9 | One-third is not unusual.  That's the agreement I think that |
| 10 | you negotiated with the lawyers, and it's fairly customary to |
| 11 | negotiate a one-third arrangement with attorneys in the event |
| 12 | of a settlement or a win, successful outcome. |
| 13 | All right.  So I'm not hearing anything from the |
| 14 | plaintiffs. |
| 15 | I will say that the one difference in a case like this |
| 16 | is that if you were to win at trial, then the attorney's fees |
| 17 | would be covered by the defendants.  They would not come out of |
| 18 | any award to the plaintiffs.  So that is -- that is a big |
| 19 | difference.  It means that if everything went well, as Ms. |
| 20 | Schulman said, and the recovery was 500,000, or 550,000, that |
| 21 | would be divided up by the plaintiffs without attorney's fees. |
| 22 | Attorney's fees would be separate and that would be on the |
| 23 | defendant.  But in a case like this where the settlement fees |
| 24 | are going to come out of the 425,000-dollar settlement. |
| 25 | All right.  So it seems to me that these are fair -- |

1    this settlement and breakdown is fair.

2           But does anybody disagree?  Because now is the time.

3    If you don't speak up now and I accept this settlement, that

4    means that your claims will be released.  So the plaintiffs

5    will have given up the claims in this complaint and any other

6    claims that are existing at this time.

7           Now, in terms of the attorney's fees, Ms. Schulman has

8    also attached to her letter a schedule, or time sheet, that

9    indicates the records kept by plaintiff's counsel during the

10   course of this litigation.  It's not incredibly in depth, but

11   it gives enough indication of the types of things that were

12   done for the hours and the amounts.  It seems to me that the

13   hourly rates are reasonable, they're in line with what lawyers

14   get paid for in cases of this sort.  And it seems to me that

15   the hours expended were reasonable, that there was no padding

16   here, that this was very vigorously litigated.  There were

17   hours expended and costs expended to pursue the case on behalf

18   of plaintiffs and that they were reasonably done.  So I'm

19   prepared to find that the attorney's fees are also reasonable.

20   So I'm prepared to approve this settlement as presented by

21   counsel.

22          Is there anything else that I should know about?

23   Anything else that should be put on the record before I approve

24   this settlement?

25          Ms. Schulman?

K94LORLH

1      MS. SCHULMAN:  I don't believe so, your Honor.

2      THE COURT:  Okay.  Mr. Smith?

3      MR. SMITH:  No, your Honor.

4      THE COURT:  All right.  And, Mr. Dusenbery, I didn't

5  mean to skip you.

6      Star six.

7      MR. DUSENBERY:  No, Judge.  Nothing.

8      THE COURT:  Okay.  All right.  So for one last time --

9  well, maybe I'm going to just want to hear from each of the

10  plaintiffs again.

11      So, Mr. Orlando, if you could star six and just tell

12  me you're okay with this settlement and you understand that

13  this will resolve the case and your claims against these

14  defendants.

15      Do you understand that?

16      PLAINTIFF ORLANDO:  Yes, I do.  I understand

17  everything that you said.

18      THE COURT:  All right.  Okay.

19      Mr. Menna, same question?

20      PLAINTIFF MENNA:  Yes, sir, I understand.

21      THE COURT:  Okay.  Great.

22      Mr. Acevedo, same question:  Do you understand this?

23  Do you understand that if I approve it, this is over and all

24  your claims are resolved?

25      PLAINTIFF ACEVEDO:  Plaintiff Acevedo: yes, your

K94LORLH

1     Honor.

2              THE COURT:  Great.  Okay.

3              Mr. Powell, same question:  Do you understand the

4     terms of this settlement?  Do you understand the effects of

5     this approve of the settlement?

6              PLAINTIFF POWELL:  Yes, I understand, your Honor.

7              THE COURT:  All right.  And, Mr. Persad?

8              PLAINTIFF PERSAD:  Yes, your Honor, I understand.

9              THE COURT:  Okay.  Great.

10             So that will resolve this case.  I will issue an order

11    indicating that I have approved the settlement, indicating that

12    the case is closed.  I will retain jurisdiction over this case

13    for the purposes of enforcing the settlement.  So if somebody

14    doesn't live up to the terms of this settlement, you get to

15    come back to me and have to start a whole new case.  You get to

16    come back to me and say, whoa, they're not living up to the

17    terms of this settlement.  And then it's a contract dispute

18    over this settlement agreement.  Okay?

19             So with that then, I will issue an order on the docket

20    that reflects that this case has been closed and the settlement

21    approved with the limited retention of the case for purposes of

22    resolving any breaches or disputes over the settlement

23    agreement.

24             Okay.  So let me thank the court reporter.  Let me

25    thank the plaintiffs for being here today.  I didn't mean to

K94LORLH

1  burden you, but I did think it's important that you to be here

2  for this proceeding.

3          I thank the lawyers as well.

4          Good luck, everybody.  Have a good weekend.  And good

5  luck with all your endeavors going forward.

6          MS. SCHULMAN:  Thank you, your Honor.

7          MR. SMITH:  Thank you, your Honor.

8          MR. DUSENBERY:  Thank you, your Honor.

9          MR. TRIVELLA:  Thank you, your Honor.

10          THE COURT:  Have a good day.

11                              ******

12

13

14

15

16

17

18

19

20

21

22

23

24

25