**Exhibit 14**

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:___4/12/2023___
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
——————————————————————————
                                                    :
NINO MARTINENKO, on behalf of herself              :
and others similarly situated,                     :
                                                    :          22-CV-518 (JLR) (RWL)
                        Plaintiff,                  :
                                                    :
        - against -                                :          **REPORT AND RECOMMENDATION
                                                    :          TO HON. JENNIFER L. ROCHON:
212 STEAKHOUSE, INC., and                          :          <u>MOTION FOR SANCTIONS</u>**
NIKOLAY VOLPER,                                    :
                                                    :
                        Defendants.                :
——————————————————————————:

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

        This is an action for unpaid wages and other violations of the Federal Labor

Standards Act ("FLSA") and the New York Labor Law (NYLL).  The Court previously

awarded reasonable attorney's fees to Plaintiff Nino Martinenko ("Plaintiff" or

"Martinenko") against Defendants 212 Steakhouse, Inc. ("212") and its owner Nikolay

Volper ("Volper") for having to move to compel Defendants to comply with their discovery

obligations.  Since then, Plaintiff asserts, Defendants have committed further discovery

violations meriting sanctions.  Accordingly, Plaintiff  has moved for additional sanctions

pursuant to Federal Rule of Civil Procedure 37 ("Rule 37").  In particular, Plaintiff seeks

(1) factual findings directly related to documents and information allegedly withheld by

Defendants in violation of the Court's orders; (2) a finding that Defendants are in contempt

and imposition of a coercive fine until they produce outstanding records; (3) payment of

a court reporter's fee incurred when Defendant 212 failed to appear for its deposition on

the first date for which it was noticed; and (4) payment of Plaintiff's attorney's fees incurred

in connection with the instant motion and the subject discovery violations.

The matter has now been referred to me for determination of the amount of fees to be awarded in connection with the earlier motion to compel, and whether further sanctions should be awarded against Defendants for additional violations.   For the reasons set forth below, I recommend that the Plaintiff's motion be GRANTED IN PART and DENIED IN PART.

### Factual and Procedural Background

The facts are derived primarily from the docket, the Declaration of Denise A. Schulman, dated October 31, 2022 (Dkt. 63) ("Schulman Decl."), the Declaration of Nino Martinenko, dated October 31, 2022 (Dkt. 64) ("Martinenko Decl."), and the accompanying exhibits to those declarations.

### A.    The Claims, The Collective, And The Putative Class

212 operates a restaurant in midtown New York called 212 Steakhouse.  Volper is the owner of 212.  Martinenko worked at 212 as a server from 2016 through 2018, and then again from early 2021 through December 2021.  On January 20, 2022, Martinenko filed her Complaint, alleging that she was subject to multiple improper pay practices applicable to all front-of-house employees who worked at 212: Defendants' deduction of a tip credit without having provided employees the requisite notice; failure to pay one-and-a-half times regular rate of pay for overtime hours worked in excess of 40 per week; failure to pay the requisite "spread-of-hours" premium for working more than 10 hours in one day; and failure to provide requisite wage notices and statements.  (*See generally* Dkt. 1.)

On April 4, 2022, Martinenko moved for conditional certification of a collective action on her FLSA claim.  (Dkt. 19.)  The Court granted that motion on April 26, 2022,

authorizing Martinenko to send notice of the collective action to all front-of-house employees employed by Defendants on or after January 20, 2019.  *Martinenko v. 212 Steakhouse Inc.*, No. 22-CV-518, 2022 WL 1227140 (S.D.N.Y. April 26, 2022).  On May 3, 2022, Defendants produced a collective list of 24 front-of-house employees, following which Martinenko disseminated the Court-approved notice.  (DiGiulio Decl. ¶ 5.[1])  One former employee, Dagmara Huk, joined as an opt-in Plaintiff.  (Dkt. 32.)

On December 9, 2022, Martinenko moved for class certification of the NYLL claims pursuant to Federal Rule of Civil Procedure 23.  The putative class is defined as "all tipped employees – servers, runners, bussers, and bartenders – who worked for Defendants at any time on or after January 20, 2016 at 212 Steakhouse."  (Dkt. 70.)  That motion is being decided concurrently with the instant motion for sanctions and will be referred to herein as the "Class Cert. R&R."

## B.    Defendants' Initial Failure To Comply With Discovery And Court Orders

Martinenko served discovery requests on Defendants on April 7, 2022.  (Schulman Decl. ¶ 7.)  Defendants did not respond to those requests by May 9, 2022, when responses were due.   (*Id*. at ¶ 8.)   On May 19, 2022, Martinenko's counsel e-mailed Defendants' counsel to request a meet and confer.   Defense counsel responded to that e-mail on May 23, 2022 by informing Martinenko's counsel that his father had recently passed away.  (*Id*. at ¶ 9.)   As defense counsel did not answer the question when he would be able to respond to the outstanding discovery requests, Martinenko asked the Court to set a reasonable deadline for Defendants' responses.  (Dkt. 33; Schulman Decl.

---

[1] "DiGiulio Decl." refers to the Declaration Of Michael DiGiulio filed in support of Plaintiff's motion for class certification at Dkt. 72.

¶ 10.)   On May 27, 2022, the Court ordered Defendants to file a responsive letter by June 1, 2022.   (Dkt. No. 34.)   Defendants neither filed a letter nor responded to Plaintiff's discovery requests.   (Schulman Decl. ¶ 11.)

On June 13, 2022, Plaintiff asked the Court to order Defendants to fully respond to Martinenko's discovery requests and produce all responsive documents by June 27, 2022.   (Dkt. 36.)   The Court so ordered on June 13, 2022.   (Dkt. 37.)   Defendants, however, did not respond to Martinenko's discovery requests or produce *any* responsive documents by June 27, 2022.   (Schulman Decl. ¶ 13.)

On June 30, 2022, Martinenko moved for sanctions pursuant to Rule 37(b)(2) and to compel Defendants to respond to Martinenko's discovery requests.   (Dkt. 38.)   On July 5, 2022, the Court ordered Defendants to respond to Plaintiff's discovery requests by July 15, 2022 and authorized Martinenko to move for her reasonable expenses incurred in connection with the motion.   (Dkt. 41.)   Defendants did not comply with the Court's July 15, 2022 order.   While Defendants produced some discovery, they did not provide complete responses to Martionenko's discovery requests or produce all responsive documents by July 15, 2022.   (Schulman Decl. ¶ 16.)   Accordingly, on July 18, 2022, Martinenko filed a status report outlining the discovery that remained outstanding.   (Dkt. 43.)

The Court held a conference on July 22, 2022 regarding the matters raised in Martinenko's status report.   (Schulman Decl. ¶ 19 and Ex. 4 (transcript of conference).) At the conference, the Court ordered Defendants to produce three sets of materials by August 5, 2022.  First, either (1) "a stipulation to the plaintiff indicating that the individual defendant had sole ownership of the restaurants, and further indicating that the corporate

defendant's gross annual sales exceeded that which would be sufficient for the corporate defendant to be considered an employer under FLSA and the New York Labor Law," or (2) documents, including tax returns, responsive to Requests for Production Nos. 19, 24, 26, and 27.[2]   (Schulman Decl. Ex. 4 at 8:15-9:4.)  Second, documents produced in prior wage and hour litigation against Defendants.   (*Id*. at 11:25-12:10 (referencing Request for Production No. 61).)  And third, documents responsive to Request for Production No. 29, which requested "[a]ll documents reflecting the amount of tips paid by the Restaurant's customers during the Liability Period."   (*Id*. at 13:7-19; Dkt. 43-2 at 6.)

The Court also ordered Defendants to produce several additional categories of documents by August 19, 2022: all bank statements from the liability period (Schulman Decl. Ex. 4 at 10:3-15); all putative class members' time records and pay records, including wage statements, with the option to redact names and contact information (*id*. at 6:20-7:20); a class list with the option to replace names with  numeric identifiers (*id*. at 13:20-14:22); and the identities of class members who Defendants claimed have released their wage and hour claims (*id*. at 14:24-15:4).

At the July 22, 2022 conference, the Court stated that it was "prepared to impose sanctions" for Defendants' failure to produce all of Martinenko's pay records and that such sanctions could include "finding facts in favor of the plaintiff."   (*Id*. at 3:20-25.)   Although

---

[2] The Court's order at the July 22, 2022 conference with respect to "4 and 5" (Schulman Decl. Ex. 4 at 8:18) refers to points 4 and 5 on page 2 of Plaintiff's July 18, 2022 letter. (*See id*. at 2:9-23 (stating that the Court will address the categories in Plaintiff's letter in order, and starting with Plaintiff's point 1 on the first page of her letter).)   Point 4 addressed documents sufficient to show Volper's ownership interest in the restaurant throughout the liability period (being responsive to Request for Production No. 19), and point 5 addressed documents reflecting gross annual sales and other financial items (being responsive to Requests for Production Nos. 24, 26, and 27).   (Dkt. 43 at 2.)

the Court declined to impose sanctions at that time with respect to some of the documents yet to be produced (*id*. at 7:11-12), the Court indicated its willingness to impose additional sanctions if Defendants continued to violate the Court's orders (*id*. at 12:10-11 (Department of Labor case materials), 13:18-19 (tip documents).)   The Court directed Martinenko to make any sanctions motion, including with respect to seeking fees in connection with her June 30, 2022 motion to compel, after August 5, 2022.   (*Id*. at 15:15-23.)   The Court subsequently approved Martinenko's request to extend her time to make her sanctions motion until after she took a 30(b)(6) deposition of 212.   (Dkt. 50.) Martinenko deposed Volper in that capacity on October 6, 2022, and questioned him about documents relevant to the case.   (Schulman Decl. ¶ 24 and Ex. 7.)

## C.   Defendants' Continued Non-Compliance

Defendants produced some responsive documents and information, but did not fully comply with the Court's June 13, July 5, and July 22, 2022 orders.   The items at issue include the following.

### 1.   Documents Concerning The Restaurant's Ownership And Revenue

Defendants complied in part with the July 22, 2022 order's directive to provide a stipulation or documents identifying the restaurant's owners and annual revenue throughout the liability period.   Electing to produce documents, Defendants produced 212's tax returns for 2016 through 2020, which indicate that in each of those years the restaurant's gross sales exceeded $500,000 and that Volper was the sole owner. Defendants have not, however, provided any revenue or ownership documents or information for 2021 or 2022.   (Schulman Decl. ¶ 25.)  As of Volper's deposition, no 2021 and 2022 tax returns had been completed.   (Schulman Decl. Ex. 7 at 139:16-19.)   At

deposition, Volper testified that he formed and owns 212 but could not answer whether anyone else owned stock in the business at any time without consulting documentation; he also had not calculated whether 2021 revenue was higher than 2020 revenue, even though both ownership and annual revenue throughout the liability period were topics identified in the deposition notice.  (Schulman Decl. Ex. 7 at 16:20-17:10, 139:24-140:3; Ex. 5 at Matters Nos. 15, 16.)

### 2.  Tip Sheets

The Court ordered Defendants to produce all tip sheets from the liability period (January 20, 2016 to the time of trial).  Defendants have produced daily tip sheets from the period January 4, 2021 to July 3, 2021.  (Schulman Decl. ¶ 26.)  Volper testified at his October 2022 deposition that he had tip sheets, that had not been produced, from two to three of the immediately preceding months. (Schulman Decl. Ex. 7 at 145:11-18.)  Volper also acknowledged that the restaurant maintains weekly tip sheets, even though it has not produced any.  (Schulman Decl. Ex. 7 at 145:19-147:14; *see also* Martinenko Decl. ¶¶ 8-12.)  At the same time, Volper testified that he produced whatever tip sheets he had found "so far" and that "whatever I find I passed to my attorney."  (Schulman Decl. Ex. 7 at 144:19-25.)

### 3.  Bank Statements

The Court ordered Defendants to produce all bank statements for the liability period.  On August 19, 2022, Defendants produced 212's bank statements from July 2016 to December 2021.  (Schulman Decl. ¶ 27.)   Even though Defendants produced those documents in August 2022, they did not produce any 2022 bank statements.  (Schulman Decl. ¶ 29.)

### 4. Class Members' Pay Records And Wage Statements

The Court ordered Defendants to produce all putative class members' pay records and wage statements from the liability period. Defendants have not produced any of these documents, with the exception of having produced wage statements for Martinenko and Huk.[3] (Schulman Decl. ¶¶ 31-33.) At deposition, Volper testified that one type of pay record used by 212 is a confirmation document employees sign when they receive their pay; the restaurant also prepares a weekly document including hours and payroll information for front- and back-of-house employees. (Martinenko Decl. ¶ 15-19 and Exs. 4, 5; Schulman Decl. Ex. 7 at 90:11-92:4, 105:20-108:4.) In response to the question whether the restaurant maintains those records, Volper testified "I believe we have such records, yes." (Schulman Decl. Ex. 7 at 91:3-7.)

### 5. Class Members' Time Records

The Court ordered Defendants to produce all putative class members' time records from the liability period. The only responsive documents Defendants have produced are (1) Martinenko and Huk's time records, and (2) time records for two individuals who previously sued Defendants for wage and hour violations. (Schulman Decl. ¶¶ 12, 34; Ex. 12.) Defendant Volper testified that he obtained Martinenko and Huk's time records from 212's "POS" (point-of-sale) system, and that he can obtain the same type of records for all employees going back to 2016. (Schulman Decl. Ex. 7 at 41:7-18, 80:16-82:2.)

---

[3] Some pay records to some extent have been produced indirectly as images of cashed checks that are included in the bank statements for the period from November 2020 to December 2021. (Schulman Decl. ¶ 31.) Those checks are not wage statements, and the check images are insufficient to establish employees' hours or rates of pay, as the checks (1) do not distinguish between wages and tip income for front-of-house employees and (2) appear to reflect net pay after withholdings, and thus do not reflect employees' gross pay. (Schulman Decl. ¶ 32; Ex. 10.)

Volper further testified that the restaurant sends time records to its accountant to process payroll.   (*Id.* at 44:15-45:17.)   Defendants have not submitted any evidence indicating that they made any attempt to obtain the time records from their accountant or to access POS time records for employees other Martinenko, Huk, and two employees who previously sued the restaurant.

### 6. Class List

Defendants have produced two employee lists, one for the collective action, and one for the putative class action.  First, on May 3, 2022, in accordance with the Court's order granting Plaintiff's motion for conditional collective certification of her FLSA claims, Defendants produced a list that purported to include all of the restaurant's front-of-house personnel employed at the Restaurant on or after January 20, 2019.  (Schulman Decl. ¶ 5 and Ex. 1.)

Second, as noted above, on July 22, 2022 the Court ordered Defendants to produce a putative class list and gave Defendants the option of replacing putative class members' names with numeric identifiers.  The class was defined in Plaintiff's document requests as all non-exempt employees of the 212 Steakhouse restaurant from January 20, 2016 to the time of trial.  (Schulman Decl. Ex. 2 at definitions of "Liability Period" and "Class Members").)  On August 19, 2022, Defendants produced their purported class list. (Schulman Decl. ¶ 37 and Ex. 13.)

Even though the class list was supposed to include employees who worked during any portion of the three years not covered by the collective list (January 20, 2016 to January 19, 2019), the only front-of-house employees included in the class list are the individuals identified on the collective list.  That is evident by comparing the dates of

employment and positions of the individuals on both lists. (*Compare* Schulman Decl. Ex. 1 *to* Ex. 13; *see also* Schulman Decl. Ex. 7 at 169:5-10.)  If the front-of-house portion of the class list were accurate, that would mean that 212 did not employ any front-of-house staff from January 20, 2016 to January 19, 2019 that it did not also employ after January 19, 2019.  That scenario is implausible, particularly given the restaurant's high turnover (Schulman Decl. Ex. 7 at 175:3-22); indeed, Martinenko identified 11 front-of-house employees by name whom she worked with during her first period of employment, which ended in 2018, who are not identified on the collective list.  (Martinenko Decl. ¶ 21.)  Some of those individuals are included in the limited weekly tip sheets in Martinenko's possession. (Martinenko Decl. ¶ 21 and Ex. 2.)  At deposition, Volper further confirmed the existence of a number of front-of-house staff who were not included in either the collective or class list.[4]  (Schulman Decl. Ex. 7 at 171:18-175:19.)

**D.   Additional Transgressions**

In addition to Defendants' continued discovery deficiencies, Martinenko asserts two additional incidents meriting sanctions.

---

[4] The scant documents produced by Defendants show that even the collective list was incomplete.  While Defendants have produced just a few months of daily tip sheets, all from the year 2021, three front-of-house employees are listed on those tip sheets who were not included in the collective list.  (Martinenko Decl. ¶ 22 and Exs. 1, 2.)  The listing of back-of-house employees (chefs, cooks, and dishwashers) on the class list is also deficient.  The class list includes at most two back-of-house employees who worked at the restaurant in July 2021.  (*See* Schulman Decl. Ex. 13.)  Yet, a payroll document provided by Martinenko shows that the restaurant employed six back-of-house employees in the week ending July 25, 2021.  (Martinenko Decl. ¶ 17 and Ex. 5.)  Defendants never consulted those documents when preparing the class list. (Schulman Decl. Ex. 7 at 168:10-19.)  Although Martinenko requested a class list including both back-of-house and front-of-house employees, she has moved for certification of a class of only front-of-house employees.

### 1. Department Of Labor Case

Plaintiff requested documents related to wage and hour investigations or audits conducted by the federal or New York Department of Labor ("DOL"). (Schulman Decl. Ex. 2 at Request No. 57.)  Defendants' response referenced attached documents but did not produce any responsive documents.  Martinenko raised this deficiency in her July 18, 2022 letter. (Dkt. 43 at 2.)  At the July 22, 2022 conference, defense counsel clarified that there in fact was no DOL case.  (Schulman Decl. Ex. 4 at 10:16-11:6.)  At his deposition, however, Volper testified that 212 was audited by the New York DOL, the audit resulted in the restaurant having to pay penalties, and Defendants do possess documents relating to that audit.  (Schulman Decl. Ex. 7 at 193:16-194:20.)  Based on Volper's testimony, Martinenko contends that defense counsel made a material misrepresentation to the Court.  According to defense counsel, however, the DOL investigation concerned unemployment insurance, not wage and hour issues. (Def. Mem. at 7.[5])  At the sanctions hearing before this Court, Plaintiff's counsel confirmed that they do not seek sanctions with respect to the DOL documents.

### 2. 212's Non-Appearance For Deposition

On August 11, 2022, Martinenko served a deposition notice on 212 for a September 22, 2022 deposition of its corporate representative. (Schulman Decl. ¶ 21 and Ex. 5.)  In an August 31, 2022 letter to the Court asking to defer making a sanctions motion until after the deposition, Martinenko noted the scheduled deposition date.  (Dkt. 49.)  Yet, no witness or counsel appeared for the deposition on September 22, 2022.

---

[5] "Def. Mem." refers to Defendants Memorandum Of Law In Opposition Of Plaintiff's Motion For Sanctions And Attorney Fees at Dkt. 67.

(Schulman Decl. ¶ 22.)   The court reporter issued an invoice for $313 to Martinenko for having appeared at the deposition that did not go forward.  (Schulman Decl. ¶ 22 and Ex. 6.)  By order of the Court, the deposition was rescheduled for and proceeded on October 6, 2022.  (Schulman Decl. ¶ 23.)

**E.    The Instant Motion For Sanctions**

Martinenko filed the instant motion on November 1, 2022.  (Dkt. 61.)  She seeks three forms of sanctions.   First, Martinenko requests that certain facts be deemed established.  Those facts are (1) the putative class is sufficiently numerous for purposes of class certification; (2) 212's gross annual sales in 2021 and 2022 exceeded $500,000; (3) Volper was the sole owner of 212 during 2021 and 2022; (4) all front-of-house employees who clocked in and out on the restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (5) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (6) Defendants did not pay putative class members a premium for spread-of-hours.  (Pl. Mem. at 13-17.[6])  Second, Martinenko asks that the Court impose a coercive monetary sanction on Defendants until they produce putative class members' time records and tip sheets.  Third, Martinenko asks that Defendants be required to pay Plaintiff's attorneys fees and costs caused by their failure to comply with discovery and the Court's orders.  (Pl. Mem. at 13.)

Defendants filed an opposing brief on November 15, 2022.  (Dkt. 65.) Defendants' brief was accompanied by an affidavit in Volper's name that is unsigned and largely vague

---

[6] "Pl. Mem." refers to Plaintiff's Memorandum Of Law In Support Of Motion For Sanctions Pursuant To Fed. R. Civ. P. 37 at Dkt. 62.

and conclusory.  (Dkt. 65-1.)  Martinenko filed a reply brief on November 22, 2022.  (Dkt. 68.)  On April 4, 2023, the Court held a sanctions hearing.  The Court asked several questions of Defendants' counsel and Volper, the latter of which testified under oath. Plaintiff and defense counsel both were given the opportunity to question Volper.

In general, the Court found Volper's testimony to be not credible, evasive, and vague.  Volper testified that he searched for more documents after the July 22, 2022 hearing but that he did not have more documents to produce because either (1) his employees discarded them (although he did not specify which ones or testify as to why he did not preserve them at the outset of the litigation); or (2) he could not act diligently due to his anxiety and depression (even though Defendants have not provided any substantiation to indicate that Volper's anxiety or depression incapacitated him or was so severe that he could not comply with document production requirements); and (3) he did not receive authorization from his employees to produce documents with their personally identifying information (which, of course, is no excuse for not producing documents given the Court's previous orders explicitly requiring their production, the availability of redaction, and Defendants' failure to seek a protective order).   Defense counsel's assertions that Volper's deposition testimony about the existence of various documents may have been mistaken is no more credible than Volper's testimony at the hearing.  Had Volper believed he had given mistaken deposition testimony, he had months to make corrections.  The record, however, is devoid of any such corrections having been made.

### Legal Standards For Discovery Sanctions Pursuant To Rule 37

Sanctions may be imposed under Rule 37 for a variety of discovery transgressions, including failure to comply with a court order and failure to comply with a discovery request

even in the absence of a court order.  Rule 37(b)(2)(A) establishes the power of the court where the action is pending to award sanctions for not obeying a discovery order.  Such sanctions may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>
> (iii) striking pleadings in whole or in part;
>
> (iv) staying further proceedings until the order is obeyed;
>
> (v) dismissing the action or proceeding in whole or in part;
>
> (vi) rendering a default judgment against the disobedient party; or
>
> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*See generally Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020) ("If a party fails to obey an order to provide or permit discovery, a district court may sanction the transgressing party in numerous ways of varying severity") (citing Fed. R. Civ. P. 37(b)(2)(A)).

Violating a court order also implicates payment of attorney's fees.  Thus, "[i]nstead of or in addition to the orders [set forth in Rule 37(b)(2)(A)], the court ***must*** order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Rule 37(b)(2)(C) (emphasis added).  Similarly, in certain instances, an award of attorney's fees is presumptively mandatory even in the absence of a court order.  For instance, if a party fails to appear for its own deposition, the Court may impose any of the sanctions listed in

14

Rule 37(b)(2)(A) for violating a court order, and "***must***" at least require the non-appearing party and/or its attorney to pay reasonable expenses and attorney's fees, unless the failure was substantially justified or other circumstances make an award of expenses unjust.  Rule 37(d)(3) (emphasis added).

In the absence of a court order, Rule 37(c)(1) permits sanctions to be imposed when a party fails to provide information or identify a witness as required by Rule 26(a) or (e).  Rule 37(c)(1) provides that:

> [i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
>
> (A) may order the payment of the reasonable expenses, including attorney's fees, caused by the failure;
>
> (B) may inform the jury of the party's failure; and
>
> (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).

Rule 37's sanctions serve three purposes: "[f]irst, they ensure that a party will not benefit from its own failure to comply.  Second, they are specific deterrents and seek to obtain compliance with the particular order issued.  Third, they are intended to serve a general deterrent effect on the case at hand and on other litigation, provided that the party against whom they are imposed was in some sense at fault."  *Roberts v. Bennaceur*, 658 Fed. Appx. 611, 614 (2d Cir. 2016) (quoting *Southern New England Telephone Co. v. Global NAPs Inc.*, 624 F.3d 123, 149 (2d Cir. 2010)); *see also* Gregory P. Joseph, 1 *Sanc. Fed. Law of Lit. Abuse* § 47 (2022) ("Rule 37 authorizes the Court to sanction certain types of discovery abuses for the purpose of (1) penalizing the culpable party or attorney;

(2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery").

Whether and to what extent to impose sanctions under Rule 37 is within the court's "wide discretion." *Ayinola v. Lajaunie*, 855 Fed. Appx. 30, 32 (2d Cir. 2021); *accord Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) ("A district court has wide discretion to impose sanctions, including severe sanctions, under [Rule] 37"). Exercise of that discretion is guided by several factors: (1) the willfulness of the non-compliant party; (2) the efficacy of lesser sanctions; (3) the duration of the non-compliance; and (4) whether the non-compliant party had been warned that non-compliance would be sanctioned. *Funk v. Belneftekhim*, 861 F.3d 354, 366 (2d Cir. 2017). "These factors are not exclusive and none is dispositive, '[b]ecause the text of [Rule 37] requires only that the district court's orders be just,' and 'because the district court has wide discretion in imposing sanctions under Rule 37.'" *Coach, Inc. v. O'Brien*, No. 10-CV-6071, 2012 WL 1255276, at *8 (S.D.N.Y. Apr. 13, 2012) (quoting *Southern New England Telephone*, 624 F.3d at 144).

## Discussion

The Court addresses the sanctions issues as follows. First, the Court considers whether any of the evidentiary sanctions requested should be imposed, and finds that several should. Second, the Court assesses whether coercive sanctions for contempt are warranted, and finds that they are. Third, the Court addresses Plaintffs' request for sanctioning 212's failure to appear at deposition when first noticed, and finds that Defendant should pay expenses incurred by Martinenko. Finally, the Court turns to

discussion of Martinenko's request for reasonable attorney's fees and costs expended in connection with the sanctions motion.

**A.     Sanctions Deeming Certain Facts Established**

As noted above, Rule 37(b)(2)(A)(i) permits courts to sanction a party for violating a discovery order by deeming certain facts established.  Such sanction is warranted for failure comply with a court order "when the failure to comply with a court order is due to willfulness or bad faith, or is otherwise culpable."  *Daval Steel Products, Division of Francosteel Corp. v. M/V Fakredine*, 951 F.2d 1357, 1367 (2d Cir. 1991); *see also Southern New England Telephone Co.*, 624 F.3d at 147 (Supreme Court precedent "permits a court to presume from a party's willful failure to answer a discovery request relating to a particular issue that the facts of that issue are established against the noncompliant party") (discussing *Insurance Corporation of Ireland Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S. Ct. 2099 (1982)).   "Noncompliance with discovery orders is considered willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control."  *Baba v. Japan Travel Bureau International*, 165 F.R.D. 398, 402-03 (S.D.N.Y. 1996) (Sotomayor, J.), *aff'd*, 111 F.3d 2 (2d Cir. 1997); *accord Joint Stock Company Channel One Russia Worldwide v. Infomir LLC*, No. 16-CV-1318, 2019 WL 4727537, at *32 (S.D.N.Y. Sept. 26, 2019), *aff'd*, 2020 WL 1479018 (S.D.N.Y. March 26, 2020).

Martinenko argues that Defendants repeatedly and willfully failed to comply with the Court's orders requiring production of documents and that a sanction should be imposed by deeming several facts established without further proof.  Those facts include

the following: (1) the putative class is sufficiently numerous for purposes of class certification; (2) 212's gross annual sales in 2021 and 2022 exceeded $500,000; (3) Volper was the sole owner of 212 in 2021 and 2022; (4) all front-of-house employees who clocked in and out on the restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (5) Defendants paid putative class members their regular rate of pay for overtime hours; and (6) Defendants did not pay putative class members a spread-of-hours premium.  (Pl. Mem. at 13-17.) Defendants respond that they complied and produced whatever documents and information they had or otherwise did not understand that certain material was called for. To determine if and what sanctions are appropriate, the Court examines in turn the documents at issue and each requested established fact.

### 1. Class List And Numerosity

As discussed above, the Court ordered Defendants to provide a putative class list, with the option to redact names.  Defendants produced a list, but one that was not complete.  The list, which included 24 front-of-house employees, did not include names of various front-of-house employees recalled by Martinenko or later identified by Volper at deposition when prompted with additional information by inquiring counsel.  It also did not include any front-of-house employees who were employed at the restaurant any time during 2016-2019 but not thereafter.  Martinenko asserts that Defendants acted willfully because at the time they produced the class list, they possessed documents, such as tip sheets and pay records, identifying putative class members who were not on the list produced.  (Pl. Mem. at 14-15.)

Determining an accurate number of front-of-house employees who worked for 212

since 2016 is important because one of the requirements for federal class certification is numerosity, which is satisfied when "the class is so numerous that joinder of all members is impracticable." Rule 23(a)(1). As set forth in the Court's concurrent Class Cert. R&R, numerosity generally is presumed satisfied when there are at least 40 putative class members. *Consolidated Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995). "Classes that encompass 'fewer than 20 members will likely not be certified absent other indications of impracticability of joinder,' while prospective classes of twenty to forty members fall into a 'gray area.'" *Jianmin Jin v. Shanghai Original, Inc.*, No. 16-CV-5633, 2018 WL 1597389, at *11 (E.D.N.Y. April 2, 2018) (quoting 1 *Newberg On Class Actions* § 3:12 (5th ed. 2011)). "[P]articularly in cases falling into the gray area between 21 and 40 class members, courts must consider factors other than class size." *Ansari v. New York University*, 179 F.R.D. 112, 114 (S.D.N.Y. 1998). The established fact that Martinenko seeks as a sanction for Defendants' failure to provide a complete class list would obviate the need for that analysis.

It is clear to the Court that Defendants have not been sufficiently diligent in compiling the class list, particularly given the omissions noted by Martinenko. But the Court need not resolve whether an evidentiary sanction as to numerosity is warranted. That issue is moot because, as set forth in the concurrent Class Cert. R&R, the Court already has determined that the class is sufficiently numerous. Accordingly, I recommended denying as moot the requested evidentiary sanction concerning numerosity.

## 2. Revenue And Ownership

The Court gave Defendants the option of either providing a stipulation that 212's

revenue exceeded $500,000, and Volper was the sole owner, each year during the period of liability, or, alternatively, documents reflecting 212's gross annual sales and documents sufficient to show Volper's ownership interest throughout the liability period.  Defendants did not give a stipulation and therefore were required to produce a full set of responsive documents.  Defendants complied in part, producing tax returns revealing the relevant information for 2016 through 2020.  Defendants did not, however, fully comply.  They failed to produce documents addressing revenue or ownership for 2021 or the partial 2022 year.

The only excuse Defendants offer is that they produced all tax returns they had. (Def. Mem. at 3.)  That, however, is no excuse at all.  The Court ordered production of responsive documents "including" tax returns.  The Court's directive was limited neither by type of document or to any subset of documents.  If Defendants did not yet have tax returns for 2021 and 2022, which would be understandable, they were obligated to produce other documents providing the information.

In opposing the instant motion, Defendants state that they "will concede that the restaurant grossed in excess of $500,000.00 in 2021 and 2022." (Def. Mem. at 5.)  That representation is too little, too late.  It addresses only revenue and not ownership, and Defendants previously were given the option of so stipulating rather than waiting for Plaintiff to file a sanctions motion to do so.  At the April 4, 2023 hearing defense counsel refused to stipulate to Volper's full ownership for 2021 and 2022 and asserted that there is no documentation at all about Volper's ownership since 2021 and 2022 tax returns have not yet been prepared.  That assertion, however, cannot be squared with Volper's deposition testimony that he could not answer the ownership question because he

needed to consult relevant documents.

Accordingly, I recommend that a sanction be imposed pursuant to Rule 37(b)(2)(A)(i) establishing the facts that 212's revenue exceeded $500,000, and Volper was sole owner, during 2021 and 2022. This sanction is both justified and just. Defendants willfully did not fully comply. The period of noncompliance has been several months; indeed, the requests were served on April 7, 2022; the Court repeatedly and clearly ordered compliance by orders dated May 27, June 13, July 5, and July 22, 2022; Martinenko filed the instant motion on November 1, 2022; and, at least as of the time of Martinenko's reply on November 22, 2022, Defendants still had not produced the missing responsive information. And, as the discovery deadline has passed without any request for extension by Defendants, and Defendants previously have been given ample opportunity to supply the requested information by stipulation or document production, the Court finds that no lesser sanction would be effective at this juncture.

### 3. Defendants' Payment Practices

Martinenko asserts that Defendants willfully failed to produce, as requested during discovery and so ordered by the Court, pay records for putative class members. As a sanction, Martinenko asks that three facts be deemed established: (1) Defendants paid the tip credit minimum wage to front-of-house employees for hours they were clocked in in using the restaurant's POS system; (2) Defendants paid putative class members their regular rate of pay, instead of time-and-a-half, for overtime hours; and (3) Defendants did not pay putative class members a spread-of-hours premium for workdays of more than 10 hours.

Defendants' failure to produce the pay records at issue has been willful and

continues despite the threat of sanctions.  As with the other records at issue, the Court ordered production of all responsive documents on four different occasions, and at the July 22, 2022 conference, the Court clearly and unambiguously specified the obligation to produce pay records for the putative class, overruling Defendants' objections. (Schulman Decl. Ex. 4 at 6:20-7:20.)  Yet Defendants produced such records only for Martinenko and Huk.  (Schulman Decl. ¶¶ 31-33.)  The fact that Defendants were able to locate and produce pay records for the named Plaintiff and sole opt-in Plaintiff suggests they have access to the same documents for other front-of-house employees. Additionally, Volper testified at his deposition that 212 maintains various pay records consisting of employee payment confirmations and payroll information for its employees. (Schulman Ex. 7 at 90:11-92:2, 105:20-108:4; *see also* Martinenko Decl. ¶¶ 15-19; Martinenko Exs. 4, 5.)  Yet, as with Defendants' other lapses, Defendants did not produce any of the required pay records in response to the Court's order or even in response to the instant motion.

Volper's unsworn affidavit states that he "supplied all the discovery requested in my possession by the dates set by the Judge."  (Dkt. 65-1 ¶ 9.)  That assertion does not help Defendants.  First, as the affidavit is unsigned, the Court cannot consider it.  *See Meimaris v. Royce*, No. 18-CV-4363, 2018 WL 9960113, at *2 (S.D.N.Y. Nov. 5, 2018) (collecting cases and explaining "[t]he Court cannot rely on the contents of an unsigned and unsworn affidavit").  Second, as with Volper's testimony at the April 4, 2023 hearing, the assertion is merely conclusory, vague, and does not provide any support that the specific documents at issue were produced or do not exist.  *See Advanced Portfolio Technologies, Inc. v. Advanced Portfolio Technologies Ltd.*, No. 94-CV-5620, 2002 WL

562650, at *5 (S.D.N.Y. April 15, 2002) (ignoring defendant's "vague, self-serving and unsupported affidavit").  To the contrary, the assertion is belied by Defendants' having produced the pay records for Martinenko and Huk and by Volper's own deposition testimony.  (*See*, *e.g.*, Ex. 7 at 91:3-7 ("I believe we have some" employee pay confirmation records), 145:19-147:14 (identifying weekly tip sheets "that the restaurant keeps," although not sure if he has them for all years).)

The evidentiary facts Martinenko requests – that Defendants paid the tip credit minimum wage to front-of-house employees for all clocked-in hours, paid overtime at the regular rate of pay, and did not pay a spread-of-hours premium – are directly related to the Court's order of production for the Defendants' pay records.  They also are consistent with the current evidentiary record.  Volper testified that the restaurant paid all front-of-house employees the tip credit minimum wage for the hours for which they were clocked in.  (Schulman Decl. Ex. 7 at 38:3-17.)  Both Martinenko and Huk's pay records show that Defendants paid them their regular rate of pay for overtime hours and did not pay a spread-of-hours premium.  (*See*, *e.g.*, Schulman Decl. Ex. 11 at D887, 890, 895, 905-07, 913, 919, 948-49, 951-57, 974-75, 977.)  And Martinenko has some 2021 paystubs for other front-of-house employees, which show that, like her and Huk, employees were paid the tip credit minimum wage and were not paid an overtime premium or a spread-of-hours premium.  (Martinenko Decl. ¶¶ 13-14 and Ex. 3.)

In light of the foregoing, the evidentiary sanction requested by Martinenko is warranted.  Accordingly, I recommend the following facts about pay be deemed established: Throughout the liability period, (1) Defendants paid the tip credit minimum wage to front-of-house employees for hours they were clocked in using the restaurant's

23

POS system; (2) Defendants paid putative class members their regular rate of pay, instead of time-and-a-half, for overtime hours; and (3) Defendants did not pay putative class members a spread-of-hours premium for workdays of more than 10 hours.

## B.    Coercive Sanctions For Time Records And Tip Sheets

Martinenko does not seek an evidentiary sanction with respect to time records and tip sheets.   Instead, she asks for a finding of contempt and imposition of monetary coercive sanctions with the objective of motivating Defendants to comply with their obligations to produce those specific materials.[7]

A party may be held in contempt for violating a court order "if (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the party has not diligently attempted to comply in a reasonable manner."   *CBS Broadcasting Inc. v. FilmOn.com, Inc.*, 814 F.3d 91, 98 (2d Cir. 2016).   As the moving party, Martinenko bears the burden of establishing each of the three elements, while Defendants bear the burden as to any defense that compliance was factually impossible.   *Latino Officers Association City of New York, Inc. v. City of New York*, 558 F.3d 159, 164 (2d Cir. 2009); *Paramedics Electromedicina Comercial, Ltda. v. GE Medical Systems Information Technologies, Inc.*, 369 F.3d 645, 658 (2d Cir. 2004).

Each of the contempt factors is met here.   With respect to class member time records, the Court's order at the July 22, 2022 conference was clear and unambiguous:

---

[7] As Plaintiff's counsel confirmed at the April 4, 2023 hearing, the sanction sought for the time records and tip sheets (i.e., coercive) is different than for the other records not produced (i.e., established facts) because the pay records and corresponding evidentiary sanctions go to establishing Defendants' policies applicable to all front-of-house employees, whereas the time records and tip sheets are specific to individual employees and material to calculating damages.

"Number 3, the putative class members time records … This is permissible class discovery. … So the documents responsive to number 3 with the redactions [of names and social security numbers] that I've permitted will be provided to the plaintiff on August 19." (Schulman Decl. Ex. 4 at 5:14-15, 6:21-24, 7:18-20.) Martinenko has demonstrated clearly and convincingly that Defendants have not complied as they have not produced any time records for putative class members, except for those produced for Martinenko and Huk and two individuals who previously sued Defendants. (Schulman Decl. ¶ 12.) And, Defendants were not reasonably diligent in attempting to comply; Volper admitted that he can retrieve all employees' time records from the restaurant's POS system and that Defendants could obtain time records from their accountant. (Schulman Decl. Ex. 7 at 41:7-18, 44:15-45:17, 80:16-82:2.) Even as of the April 4, 2023 hearing, Volper had not attempted to retrieve the additional POS data.

Similarly, with respect to tip sheets, the Court clearly and unambiguously ordered Defendants, "on pain of sanctions," to produce all "tip documents" in their possession. (Schulman Decl. Ex. 4 at 13:17-19.) The evidence is clear and convincing that Defendants did not comply. Defendants did not produce any additional tip sheets by the deadline of August 5, 2022 but later admitted during Volper's deposition that they possess some tip sheets from at least 2022 that they did not produce. (Schulman Ex. 7 at 145:14-18.) Any suggestion that Volper did not understand that he had to produce records from 2022 rings hollow given that the liability period runs to the time of trial, and because Defendants did not even produce the records in response to the instant motion or

otherwise indicate that Volper's deposition testimony was in error.[8]

Defendants' conduct with respect to both time records and tip sheets was willful. As noted, Defendants have access to records maintained in their POS system and those provided to their accountant. At the July 22, 2022 conference, defense counsel assured the Court that he would "revisit" with his clients to "make sure" that any tip sheets in Defendants' possession would be produced (Schulman Decl. Ex. 4 at 13:13-16) and that he could meet the August 19, 2022 deadline for producing putative class members' time records (*id.* at 7:13-17). Yet Defendants did not produce the requisite records by the deadlines imposed and have not produced any in response to the instant motion, thus establishing both non-compliance and lack of diligence.

Having made the determination that Defendants are in contempt, the Court turns to assessing the sanctions to be imposed. Martinenko has asked for coercive sanctions so that Defendants produce the time records and tip sheets. Unlike compensatory sanctions, which focus on past injury, coercive sanctions focus on future conduct. *See Southern New England Telephone*, 624 F.3d at 146 ("Civil contempt sanctions may serve dual purposes: securing future compliance with court orders and compensating the party that has been wronged") (internal quotation marks and brackets omitted)*; Gucci America v. Bank of China*, 768 F.3d 122, 144 (2d Cir. 2014) ("a civil contempt sanction must only be compensatory or coercive, and may not be punitive"). "A sanction coerces a defendant

---

[8] Martinenko adds that she never saw anyone throw out weekly tip sheets removed from where they are kept in the restaurant (Martinenko Decl. ¶ 12), "further calling into question the completeness of Defendants' production." (Pl. Mem. at 19.) The Court does not find that particular contention persuasive in establishing Defendants' willful non-compliance. Martinenko was not employed at all times during the liability period, and Volper or others could have discarded or removed records at any time that Martinenko was not present in the restaurant.

when it forces the contemnor to conform his conduct to the court's order." *CBS Broadcasting,* 814 F.3d at 101 (internal quotation marks and brackets omitted). Coercive sanctions thus need to "be substantial enough to make it more economical for [the contemnor] to comply than not to comply." *Perfect Fit Industries Inc. v. Acme Quilting Co.*, 673 F.2d 53, 57 (2d Cir. 1982)). "When the purpose of a sanction is coercive, courts have 'broad discretion to design a remedy that will bring about compliance.'" *Chase Bank USA, N.A. v. M. Harvey Rephen & Associates, P.C.*, No. 19-MC-275, 2019 WL 13046982, at *4 (S.D.N.Y. Aug. 16, 2019) (quoting *Perfect Fit Industries*, 673 F.2d at 57). Factors considered in determining the coercive sanctions to be imposed include "(1) the character and magnitude of the harm threatened by the continued contumacy; (2) the probable effectiveness of any suggested sanction in bringing about compliance; and (3) the contemnor's financial resources and the consequent seriousness of the burden of the sanction upon him." *Dole Fresh Fruit Co. v. United Banana Co.*, 821 F.2d 106, 110 (2d Cir. 1987).

Here, the harm is that Martinenko is deprived of material information relevant to determining the extent to which Defendants did or did not comply with the applicable wage and hour rules and the extent of damages for the members of the putative class. The parties have not addressed what will happen in the absence of the documents sought, but at the very least it will limit and complicate the proof available to the putative class. A monetary sanction also could well be exactly the motivation Defendants need to be more diligent and thoroughly comply with the Court's orders and for defense counsel to assure that they do so. The Court has no evidence before it of the Defendants' financial

wherewithal, but can reasonably infer from, inter alia, this being a single restaurant case that Defendants are of modest means; Martinenko has not suggested otherwise.

In light of all the circumstances, the Court recommends imposing coercive sanctions with respect to the time and pay records of other employees as follows: (1) Defendants be given 14 days from the date of the Court's decision on the instant motion to produce all time records and tip sheets for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents and explaining what they have done to search for and collect them;[9] (2) that, starting 15 days from the date of the Court's decision on the instant motion, if Defendants still have not purged their contempt, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of the decision on the instant motion, the coercive sanctions increase to a daily amount of $250. *Cf. 1199 SEIU United Healthcare Workers East v. Alaris Health at Hamilton Park*, No. 18-CV-3336, 2019 WL 1448075, at *2 (S.D.N.Y. March 11, 2019) (imposing fines for failure to comply with post-judgment asset discovery of $1,000 per day escalating to $5,000 after five days and $10,000 after twenty days); *Mitchell Group USA, LLC v. Udeh*, No. 14-CV-5745, 2015 WL 6760109, at *8 (E.D.N.Y. Nov. 5, 2015) (imposing coercive sanction of $250 per day of continued discovery violation); *United Fabrics International, Inc. v. Metro 22, Inc.*, No. 16-

---

[9] At the April 4, 2023 hearing, Volper's testimony suggested that there are no more tip sheets to produce.  If that is so, the required affidavit shall so state.

MC-253, 2016 WL 6310775, at *2 (S.D.N.Y. Oct. 27, 2016) (imposing coercive sanction of $100 per day until compliance with discovery order).

## C.   Sanctions For 212's Failure To Appear At Deposition

Martinenko requests that Defendant 212 be ordered to pay the court reporter's fee for the September 22, 2022 deposition at which 212 failed to appear.  As set forth above, costs and attorney's fees must be imposed for a party's failure to appear at its own deposition absent substantial justification or circumstances rendering such sanctions unjust.  Rule 37(d)(3).  The non-appearing party bears the burden of "showing that his failure is justified or that special circumstances make an award of expenses unjust." *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) (internal quotation marks omitted). "[C]onduct is substantially justified if there was a genuine dispute or if reasonable people could differ as to the appropriateness of the contested action."  *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 145, 148 (S.D.N.Y. 2014) (internal quotation marks omitted).

Here, 212 failed to appear for its duly noticed deposition on September 22, 2022. Defense counsel argues that failing to appear was justified because neither Martinenko nor her attorney "confirmed" the date and time of the deposition.  (Def. Mem. at 5.)  That is no justification at all.  No rule requires a party to confirm the date and time of a duly noticed deposition.  Moreover, Plaintiff's counsel did effectively provide confirmation in her August 31, 2022 letter to the Court, which provided Defendants with further notice that Martinenko intended to proceed with the September 22, 2022 deposition.   If Defendant 212 or its counsel had any question about whether the deposition was going forward or needed to reschedule it, counsel should have contacted Martinenko's counsel

in advance to do so.  In short, Defendants have neither showed that the failure to appear at the September 22, 2022 deposition was substantially justified nor that any special circumstances render an award of expenses unjust.

Based on defense counsel's explanation for failing to appear – wrongfully taking the position that Defendant 212 had no need to appear in response to the duly served deposition notice without further confirmation – the obligation to pay for Martinenko's expenses should fall on defense counsel, not his client.  Accordingly, defense counsel Mitchell Segal should be required to reimburse Plaintiff for the $313 court reporter fee.[10]

### Attorney's Fees

In addition to the sanctions already discussed, Martinenko seeks an award of her attorney's fees and costs incurred in seeking to compel Defendants' compliance with discovery and in bringing the instant sanctions motion.  The Court finds that an award of reasonable attorney's fees and costs is warranted pursuant to Rule 37; indeed, an award of fees and costs is mandatory under 37(b)(2)(C) and 37(d)(3), and the Court finds no reason that such an award would be unjust or otherwise unwarranted.  There is no justification for Plaintiff to bear the cost of seeking to remedy Defendants' willful discovery violations.

The traditional approach to determining a fee award is the "lodestar" calculation, which is the number of hours expended multiplied by a reasonable hourly rate.  *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007); *Tackie v. Keff Enterprises LLC*, No. 14-CV-2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014).  The Second Circuit has

---

[10] Martinenko does not seek attorney's fees for the mere few minutes Plaintiff's counsel spent going on the record on September 22, 2022 to note Defendant's absence.  (Pl. Mem. at 11 n.5.)

held that "the lodestar … creates a 'presumptively reasonable fee.'"  *Millea v. Metro-North Railroad Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008); and then citing *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552, 130 S. Ct. 1662, 1673 (2010)); *see also Stanczyk v. City of New York*, 752 F.3d 273, 284-85 (2d Cir. 2014) (reaffirming *Millea*).  To arrive at a lodestar calculation, "[t]he party seeking an award of [attorney's] fees should submit evidence supporting the hours worked and rates claimed." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983).  Plaintiff has submitted such evidence here, consisting of contemporaneous records of time expended by specific attorneys.  (Schulman Decl. Ex. 15.)  The Court addresses in turn counsel's hourly rates and the number of hours worked.

## A.  Hourly Rates

Courts assess the reasonableness of a proposed hourly rate by considering the prevailing market rate for lawyers in the district in which the ruling court sits.  *Polk v. New York State Department of Correctional Services*, 722 F.2d 23, 25 (2d Cir. 1983).  "The rates used by the court should be current rather than historic hourly rates."  *Reiter v. Metropolitan Transportation Authority of New York*, 457 F.3d 224, 232 (2d Cir. 2006) (internal quotation marks omitted).  "[C]ourts may conduct an empirical inquiry based on the parties' evidence or may rely on the court's own familiarity with the rates if no such evidence is submitted."  *Wong v. Hunda Glass Corp.*, No. 09-CV-4402, 2010 WL 3452417, at *2 (S.D.N.Y. Sept. 1, 2010) (internal quotation marks omitted).  Additionally, "the range of rates that a plaintiff's counsel actually charge[s] their clients … is obviously strong evidence of what the market will bear."  *Rozell v. Ross-Holst*, 576 F. Supp. 2d 527,

544 (S.D.N.Y. 2008); *see also Lilly v. County of Orange*, 910 F. Supp. 945, 949 (S.D.N.Y. 1996) ("The actual rate that counsel can command in the market place is evidence of the prevailing market rate").

Plaintiff seeks recovery of attorney's fees for two attorneys: Denise A. Schulman and Michael DiGiulio of Joseph & Kirschenbaum LLP.  Schulman, a partner, charged an hourly rate of $500.   Ms. Schulman graduated from New York University School of Law in 2008 and has practiced plaintiff-side employment law since joining the firm in 2009. (Schulman Decl. ¶¶40-43.)  Courts have praised the work of both Ms. Schulman and her firm.  *See Orlando v. Liberty Ashes, Inc.*, No. 15-CV-9434 (S.D.N.Y.), Sept. 4, 2020 transcript (Schulman Decl. Ex. 16), at 10 ("in my entire experience with [Ms. Schulman] in this case, and a lot of others, she's always been among the very best lawyers in th[e] case; *Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, No. 13-CV-5008 (S.D.N.Y.), Dec. 21, 2015 transcript (Schulman Decl. Ex. 17), at 20 ("I think Mr. Kirschenbaum and Ms. Schulman and their firm are the best in breed – of firms doing this kind of work").

Ms. Schulman's $500 hourly rate is higher than the rates generally recognized as reasonable for garden-variety wage and hour cases such as this one.  *See, e.g.*, *Lin v. La Vie En Schezuan Restaurant Corp.*, No. 15-CV-9507, 2020 WL 1819941, at *3 (S.D.N.Y. April 9, 2020) (recognizing reasonable rates for senior attorneys handling wage and hour cases as $300 to $400); *Shanfa Li v. Chinatown Take-Out Inc.*, No. 16-CV-7787, 2019 WL 3715086, at *6 (S.D.N.Y. Aug. 7, 2019) ("Experienced litigators and partners are commonly awarded between $300 and $400 per hour in FLSA cases within the Southern District of New York").  That said, more recently than either of the cases just cited, Ms. Schulman's $500 hourly rate was approved as reasonable by Judge Woods in

a routine wage-and-hour case.  *Zivkovic v. Laura Christy LLC*, No. 17-CV-553 (S.D.N.Y.), June 15, 2022 transcript (Schulman Decl. Ex. 18) at 16-17.   The Court approved Ms. Schulman's rate as reasonable not only due to her experience and the quality of her work, but also because the existing precedent "anchors rates in the past." (*Id.* at 15.)  The Court also found support for Ms. Schulman's rate in data regarding prevailing rates in New York for employment litigators.   (*Id.* at 15-16.)   This Court agrees with Judge Woods' observation that repeated use of precedent regarding attorney's fees tethers rates to outdated standards.  *See also Champagne v. Columbia Dental, P.C.*, No. 3:18-CV-1390, 2022 WL 951687, at *6 (D. Conn. March 30, 2022) (discussing the appropriateness of increasing attorneys' hourly rates due to lapse of time and increase in cost of living).  The Court also agrees that Ms. Schulman's rate is reasonable.

The Court similarly finds that Mr. DiGiulio's rate of $350 per hour is reasonable. Mr. DiGiulio graduated law school in 2014, clerked on the Second Circuit Court of Appeals, previously practiced environmental litigation, and joined Joseph & Kirschenbaum in 2020, where he has since exclusively represented employees in wage and hour, discrimination, and retaliation claims.  (Schulman Decl. ¶¶ 45-47.)  Some courts have found $350 to be a reasonable hourly rate for associates, although, again, at the high end and without taking into account the need to increase rates over time to keep up with the local legal industry.  *See*, e.*g.*, *Wen Bin Gao v. Lucky Brother Inc.*, No. 17-CV-8159, 2020 WL 8838035, at *2 (S.D.N.Y. June 9, 2020); *Rodriguez v. 3551 Realty Co.*, No 17-CV-6553, 2017 WL 5054728, at *3 (S.D.N.Y. Nov. 2, 2017).  Given Mr. DiGiulio's experience, his exclusive focus on employment disputes including wage and hour cases,

and the quality of the work performed in this case, among other factors, the Court finds his $350 hourly rate to be reasonable.

**B.    Hours Worked**

To determine the compensable hours, "the court must examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." *Tlacoapa v. Carregal*, 386 F. Supp. 2d 362, 371 (S.D.N.Y. 2005) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).  "In making this examination, the district court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties."  *Gierlinger*, 160 F.3d at 876.  (quoting *DiFilippo v. Morizio*, 759 F.2d 231, 235-36 (2d Cir.1985)).  "The relevant issue ... is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures."  *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992); *see also Mugavero v. Arms Acres, Inc.*, No. 03-CV-5724, 2010 WL 451045, at *6 (S.D.N.Y. Feb. 9, 2010) (same).  A court thus should exclude from the lodestar calculation "excessive, redundant or otherwise unnecessary hours."  *Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir. 1999); *see also Luciano v. Olsten Corp.*, 109 F.3d 111, 116 (2d Cir. 1997) ("If the district court concludes that any expenditure of time was unreasonable, it should exclude these hours from the lodestar calculation").

The time records submitted reflect that Ms. Schulman and Mr. Digiulio expended a total of 63.4 hours in researching, drafting, and editing briefs, declarations, and correspondence in connection with applying for discovery sanctions against Defendants. (*See* Schulman Decl. Ex. 15; Reply Mem. at 10 (additional hours in connection with reply

brief).[11])  Ms. Schulman accounts for 44.1 of those hours; Mr. Digiulio accounts for 19.3 of the hours.  The Court has reviewed the billing records and finds that the time recorded is reasonable in light of the circumstances, including the multiplicity of discovery violations requiring redress and the thoroughness and quality of the work performed.  Although Ms. Schulman, whose rate is higher than Mr. DiGioulio's rate, did the lion's share of work, the Court cannot conclude that work should have been delegated down to a greater extent, particularly given the apparent efficiency with which Ms. Schulman appears to have performed the work involved.  Moreover, the charges do not reflect any work by the attorneys for paralegal work, administrative tasks, or other work that would have been more appropriate for others to perform.

## C.    The Amount Awarded

Having determined that the rates charged by Ms. Schulman and Mr. DiGiulio are reasonable, and that the hours expended by them in connection with moving for sanctions are reasonable, the Court finds that Martinenko should be awarded attorney's fees and costs in the amount of $28,805.

## Conclusion

For the foregoing reasons, I recommend that to redress Defendants' various violations of discovery obligations and orders:

(1)    The Court deem established the following facts: (i) 212's gross annual revenue in 2021 and 2022 exceeded $500,000; (ii) Defendant Volper was the sole owner of 212 in 2021 and 2022; (iii) all front-of-house employees who clocked in and out on the

---

[11] "Reply Mem." refers to Plaintiff's Reply Memorandum Of Law In Support Of Motion For Sanctions Pursuant To Fed. R. Civ. P. 37 at Dkt. 68.

restaurant's POS system were paid the applicable New York tip credit minimum wage for the hours for which they were clocked in; (iv) Defendants paid putative class members their regular rate for overtime hours (rather than time-and-a-half); and (v) Defendants did not pay putative class members a spread-of-hours premium.

(2)     The Court find Defendants in contempt for failing to comply with the Court's order requiring production of all tip sheets and time records for the putative class, and impose coercive sanctions as follows: (i) Defendants be given 14 days from the date of the Court's decision on the instant motion to produce all tip sheets and time records for the putative class that are within Defendants' possession, custody or control, along with a sworn affidavit from Defendants attesting that Defendants have produced all such documents found after a reasonable search and explaining what they have done to search for and collect them; (2) that, starting 15 days from the date of the Court's decision on the instant motion, to the extent that the contempt still has not been purged, coercive sanctions be imposed, payable to the Clerk of Court, at the rate of $100 per day of continued non-compliance until the contempt is purged; and (3) if Defendants still have not purged the contempt after a total of 30 days from the date of the decision on the instant motion, the coercive sanctions increase to a daily amount of $250.

(3)     The Court order Defendants' attorney Mitchell Segal to pay Plaintiff for the $313 court reporter fee incurred when Defendant 212 failed to appear for its deposition on the first day for which it was noticed; and

(4)     The Court order Defendants to pay reasonable attorney's fees and costs in the amount of $28,805, which were incurred in connection with the instant motion and the subject discovery violations.

I further recommend that Plaintiff's request to find numerosity established be denied as moot, and that Plaintiff's motion be denied in all other respects.  To the extent not discussed above, the Court has considered all of Defendants' arguments and finds them to be without merit.

### Deadline For Objections

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the Chambers of the Honorable Jennifer L. Rochon, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, New York 10007.  **Failure to file timely objections will preclude the right to object and to seek appellate review.**

SO ORDERED.

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated:      April 12, 2023
            New York, New York

37